**STATE of Indiana on the Relation of Michael BERKSHIRE, Appellant–Plaintiff,**

v.

**CITY OF LOGANSPORT, Indiana; and Logansport Parks & Recreation Board, Appellees–Defendants.**

No. 09A02–0911–CV–1139.

Court of Appeals of Indiana.

June 4, 2010.

---

Matthew D. Barrett, Matthew D. Barrett, P.C., Logansport, IN, Attorney for Appellant.

Kelly Leeman, Logansport, IN, Attorney for Appellees.

## OPINION

BAKER, Chief Judge.

Nearly one hundred years ago, Cass County Circuit Judge David D. Dykeman died, leaving certain real property to the

City of Logansport to operate as a public park. Although the park has been in operation since the early 1900s, Michael Berkshire, a Logansport resident, objects to Logansport's decision to allow the sale of alcohol on the premises. As a result, Berkshire filed an action against Logansport and its Parks and Recreation Board in 2009, claiming that the Park had not been operated and managed in accordance with the directives of Judge Dykeman's will (Will). Although the trial court found that Berkshire had standing to bring the action, it determined that the statute of limitations had long expired.

Thus, appellant-plaintiff the State of Indiana on the relation of Berkshire appeals the trial court's grant of appellees-defendants City of Logansport and the Logansport Parks and Recreation Board's (collectively, Logansport) motion to dismiss Berkshire's action that sought a writ of mandate, declaratory judgment, and injunctive relief regarding the operation of Dykeman Park. Specifically, Berkshire argues that the trial court erroneously determined that the statutes of limitations barred his action because those statutes do not apply to actions for a writ of mandate.

Moreover, although Berkshire asserts that the trial court correctly entered partial summary judgment in his favor on the issue of standing, he maintains that his motion should have been granted in its entirety because Logansport is improperly attempting to appeal the trial court's finding that he had standing to raise the issues and it failed to comply with the designation of evidence requirement set forth in Indiana Trial Rule 56(C). Logansport cross-appeals, claiming that the trial court erred in determining that Berkshire could bring his action in accordance with the public standing doctrine.

We first conclude that Logansport did not waive its statute of limitations defense even though it did not raise that defense in its response to Berkshire's motion for summary judgment. Therefore, Logansport's cross-appeal is properly before us. We also find that although a citizen in Berkshire's capacity may have been able to challenge the manner in which the City controlled and managed Dykeman Park at some point, we agree with the trial court's determination that Berkshire—a citizen of Logansport who makes no claim as an heir of Judge Dykeman—is precluded from attacking the manner in which the City has operated the park for over ninety years.

### FACTS [1]

On February 23, 1911, Judge Dykeman died. His Will provided in part as follows:

Item 21. I hereby give, devise and bequeath unto my executor hereinafter named, my Pollard farm situated on College Hill in Noble Township [description omitted], in trust for the following uses and purposes, to-wit: To convey and transfer said Pollard farm to the City of Logansport, Indiana, by proper instrument of conveyance, to be had and said City shall enter into a written agreement and compact with my Executor by its proper officers under the direction and authority of its Common Council, stipulating and agreeing irrevocably on the part of said city. First; that said property shall forever be always named and designated "Dykeman Park", Second; *that said "Dykeman Park" shall be managed and controlled by three (3) park Commissioners, one to be appointed by the common council of said city,*

---

**1.** We heard oral argument in this case in Indianapolis on May 12, 2010. We commend counsel for their able presentations.

*one by the Board of County Commissioners of Cass County, Indiana, and one by the judge of the Cass Circuit Court of Indiana, who shall serve without pay from my estate for a term of three years when their successors shall be appointed,* and Third; that the City of Logansport will annually appropriate and expend on the improvement of said "Dykeman Park" the sum of Fifteen Hundred Dollars ($1500.00); said written agreement and compact to be recorded in the Recorder's office of Cass County, Indiana, and said Deed of conveyance by my executor to be conditioned upon the observance of the terms of said agreement and compact by said city.

Appellant's App. p. 108–09 (emphasis added). The Will also provided that

In case the City of Logansport refuses to accept the title to said property and trust as herein provided, and to enter into said agreement and compact, then and in that case, after the expiration of three years [from] my death, said Pollard farm shall be and become part and parcel of the fund hereinafter constituted and provided for the support of the "Mary Dykeman Hospital" and shall be sold by my executor as hereinafter provided in Item 23rd[2] of this will and the proceeds of said sale added to said fund for the support of said "Mary Dykeman Hospital."

Appellant's App. p. 185. After Judge Dykeman's will was probated in February 1911, the executor of Judge Dykeman's estate transferred a deed to Logansport on February 2, 1914, with regard to the park.

On January 4, 1915, Logansport's Common Council passed a Resolution accepting the terms of Item 21 of the Will. The Resolution provided in relevant part that

Now Therefore, the said party of the first part, by its said Mayor, and with the approval of its Common Council, does by these presents accept said bequest and contracts and agrees with the said party of the second part that the city will accept the title to said described real estate and will hold the same in trust for the uses and purposes therein specified, and that the said property shall forever be and remain a public park to be always known and designated as the "Dykeman Park." *That the same shall be managed and controlled by three Park Commissioners, one to be appointed by the Common Council of the city, one by the Board of Commissioners of Cass County, Indiana, and one by the Judge of the Cass Circuit Court of Indiana, who shall serve without pay from the estate of said testator for the term of three years, when their successors shall be appointed;* and that the said city shall out of funds in its treasury, that may be lawfully appropriated therefore, annually appropriate and expend on the improvement of said "Dykeman Park" the sum of Fifteen Hundred Dollars ($1500.00).

31. In Witness Whereof, the said parties have hereunto set their hands and seals, the said party of the first part executing this contract by Frank V.

---

**2.** This item of the Will provided that Judge Dykeman's residuary estate would be given to his Executor in trust to build, furnish, and equip a hospital in the memory of Judge Dykeman's deceased wife that would be known as the "Mary Dykeman Hospital." Appellant's App. p. 186–87. Judge Dykeman's heirs directly challenged this provision

and attempted to set aside the charitable bequest that was dedicated to the establishment of the hospital. Logansport was not a party to that litigation, *see Dykeman v. Jenkines,* 179 Ind. 549, 101 N.E. 1013 (1913), but the Executor of the Estate and the Cass County Commissioners were.

Guthrie, its Mayor, and causing the official seal of said city to be attached and attested by its Clerk.

CITY OF LOGANSPORT, INDIANA,

By *Frank V. Guthrie*, Mayor

ATTEST: *William Pickett*, City Clerk.

*Albert G. Jenkines*

Executor of the last will and testament

of David D. Dykeman, Deceased

*Id.* at 128–31 (emphasis added).

In 1979, Logansport adopted an ordinance that created a Board of Department of Parks and Recreation (Board) pursuant to "I.C. 1971, 19–7–4–6," that would exercise control the city parks. *Id.* at 193. The ordinance also provided that the Board "shall have the general power to perform all acts necessary to acquire and develop sites and facilities and to conduct such programs as are generally understood to be park and recreation functions." *Id.* at 100.

Since 1979, the Board has controlled all of Logansport's parks, including Dykeman Park. The current version of the Ordinance that was adopted in 1997 provides, among other things, that *four* members were to be appointed by the Mayor, along with one member of the Logansport School Corporation Board of Trustees.[3]

Prior to the Board's creation, Logansport's parks were controlled and managed by a three-member Board of Public Works and Safety that consisted of the Mayor and his two appointees. And prior to 1914, the Board never administered Dykeman Park in accordance with the original three-board Committee as Judge Dykeman had set forth in the Will. But for the provisions regarding the Committee, Logansport has continuously operated the land as "Dyke-

man Park" and it is undisputed that Logansport has appropriated well over $1500 on an annual basis for the improvement and maintenance of the park pursuant to the Resolution and the Will.

Approximately two years ago, Berkshire became concerned about Logansport's decision to sell alcoholic beverages at Dykeman Park. Berkshire reviewed the Logansport City Code and discovered the reference to Dykeman Park. On March 11, 2009, Berkshire retained attorney Matthew D. Barrett, who located a record containing the full text of the provisions that related to Dykeman Park. At that time, Berkshire learned that Dykeman Park was to be managed and controlled by three "Park Commissioners," as set forth in the Resolution and the Will. Appellant's App. p. 208.

On April 7, 2009, Berkshire filed a Verified Complaint for "Writ of Mandate & Declaratory and Injunctive Relief" against Logansport, claiming that Logansport violated one of the conditions that were set forth in the deed and the Will. *Id.* at 97. Berkshire claimed, among other things, that

15. [T]he City, by and through the Board, has exercised unlawful management and control over Dykeman Park *by a five member board,* which is composed of four members appointed by the Mayor of the City and one member of the Logansport School Corporation Board of Trustees appointed by the school board.

*Id.* at 101 (emphasis added). Additionally, Berkshire

23. [D]esires a judicial determination of the rights and duties of the parties and a declaration that the City and Board have exercised unlawful manage-

3. Indiana Code section 36–10–3–3 permits the fiscal body of a governmental unit to adopt an ordinance creating such a department that consists "of a park and recreation board, a superintendent, and other personnel that the board determines."

ment and control over Dykeman Park by failing to abide by the provisions of the Resolution, and that such unlawful action ... should be declared null and void.

*Id.* at 103. Berkshire also claimed that the Ordinance, as it relates to Dykeman Park, amounted to an unconstitutional impairment of contractual obligations assumed by Logansport under the terms of the Resolution. As a result, Berkshire sought injunctive relief to "permanently restrain, prevent and otherwise enjoin the city and Board, and their duly-authorized officials, from exercising any further unlawful control and management over Dykeman Park in violation of the ... Resolution." *Id.* at 105.

On June 1, 2009, Logansport filed its answer to the complaint, presented affirmative defenses, and moved to dismiss the action. In its answer, Logansport raised the affirmative defenses of the statute of limitations, estoppel, laches, and adverse possession.

In the motion to dismiss, Logansport claimed that Berkshire failed to state a claim upon which relief can be granted because Berkshire "is not a real party in interest and has failed to join the estate that would be a real party in interest and necessary for any appropriate relief." *Id.* at 132. Logansport also asserted in its affirmative defenses that the statute of limitations "has long expired on any claim that ... [Berkshire] or any other Plaintiff could hope to bring based upon the City not utilizing a three person committee set out in the original ... Resolution." *Id.* at 133.

Finally, Logansport contended that to the extent that Berkshire "stands in the shoes of the Dykeman estate" or its heirs, estoppel bars his claims because Logansport has acted upon and relied upon the agreement by maintaining the park and has spent "large sums of money far exceeding the $1500 [Judge Dykeman] requested the City to expend annually to maintain the park." *Id.*

On June 10, 2009, Berkshire filed a motion for summary judgment, contending that he "has a clear and unquestioned legal right to seek enforcement of the Resolution/Dykeman Agreement," that the designated evidence establishes that Dykeman Park has not been managed and controlled in the manner as required by the Resolution, and that declaratory and injunctive relief should be granted. *Id.* at 143–68. Berkshire also filed a response in opposition to Logansport's motion to dismiss, claiming that he was a "real party in interest" and had standing to bring the action. *Id.* at 140–41. Also on June 10, Logansport filed a response in opposition to Berkshire's motion for summary judgment and claimed that it was entitled to summary judgment "on the grounds previously filed with the Court." *Id.* at 214. Logansport's response included seventy pages of documents that were taken from Judge Dykeman's estate file that was maintained in the clerk's office of the Cass Circuit Court. However, Logansport did not specifically identify any portion of those documents in support of its opposition to Berkshire's motion or in support of its claim for summary judgment.

On August 31, 2009, Logansport filed a memorandum in support of its motion to dismiss, claiming that Berkshire lacked standing to bring the action. Moreover, Logansport contended that "ten or twenty years after the Ordinance was passed the authority to act under the terms of ... [Judge Dykeman's] will or the right of his beneficiaries expired under I.C. 34–11–2–11 (10 or 20 years) or I.C. 34–11–1–2 (15 years)." *Id.* As a result, Logansport maintained that the right of any of Judge Dykeman's heirs to bring an action under

the will or Resolution was "long gone," and that Berkshire was never a real party in interest. *Id.* at 308.

Following a hearing on September 4, 2009, the trial court granted Berkshire's motion for summary judgment in part, concluding that Berkshire had public standing to bring the action and that the Dykeman Resolution was a valid contract. However, the trial court set a hearing for November 6, 2009, as to whether Berkshire brought the action in a timely manner with regard to the statutes of limitations argument that Logansport presented in its answer and motion to dismiss.

On November 5, 2009, Logansport filed an additional memorandum, again challenging Berkshire's standing to bring the action and asserted that any statutes of limitations had "long expired." *Id.* at 368.

At the conclusion of the hearing on the motion to dismiss, the trial court determined that Berkshire had not brought his claim in a timely manner. In its ruling from the bench, the trial court commented that

> [T]his case is barred by the running the Statute of Limitations. . . . I want to make it clear that the issue before the Court that the City did not manage and control Dykeman Park by three Park Commissioners; one to be appointed by the Common Council of the City, one by the Board of Commissioners [of] Cass County, and one by the Judge of the Circuit Court of Indiana who shall serve without pay from the Estate of said Testator for a period of three years. . . . I don't want to say I'm not following the law, but I don't, I understand what you're saying, uh, being a beneficiary trust, and I think you've correctly cited this, the laws as it relates to repudiations of the Trust. But again, the City's refusal to operate the Park for over ninety years in a manner in which Judge

> Dykeman previously determined is something that I'm not willing is forever an open sore that can be addressed by any person that has the resources with which to come to Court and challenge. In that regard, call it common sense if you will.
>
> . . .
>
> I find . . . the Defendant's motion to dismiss granted if that's how detailed you want it. . . .

Appellant's App. p. 85–86. This appeal ensues.

## DISCUSSION AND DECISION

### I. Standard of Review

A Trial Rule 12(B)(6) motion to dismiss for failure to state a claim upon which relief can be granted tests the legal sufficiency of a claim, not the facts supporting it. *K.M.K. v. A.K.*, 908 N.E.2d 658, 662 (Ind.Ct.App.2009), *trans. denied.* Therefore, we view the complaint in the light most favorable to the non-moving party, drawing every reasonable inference in favor of this party. *Id.* In reviewing a ruling on a motion to dismiss, we stand in the shoes of the trial court and must determine if the trial court erred in its application of the law. The trial court's grant of the motion to dismiss is proper if it is apparent that the facts alleged in the complaint are incapable of supporting relief under any set of circumstances. *Id.* Furthermore, in determining whether any facts will support the claim, we look only to the complaint and may not resort to any other evidence in the record. *Id.*

On the other hand, Trial Rule 12(B) also provides that a motion to dismiss for failure to state a claim upon which relief can be granted "shall be treated as one for summary judgment" if matters outside the pleading are presented and not excluded. *See Ace Foster Care & Pediatric Home*

*Nursing Agency Corp. v. Ind. Family & Soc. Servs. Admin.,* 865 N.E.2d 677, 681–82 (Ind.Ct.App.2007) (observing that when the parties were provided a reasonable opportunity to present external material and to respond to the arguments made, the trial court's order is reviewed as one granting summary judgment).

██ Thus, in accordance with Trial Rule 56(C), summary judgment is appropriate only when there are no genuine issues of material fact and the moving party is entitled to a judgment as a matter of law. In reviewing a trial court's ruling on summary judgment, this court stands in the shoes of the trial court, applying the same standards in deciding whether to affirm or reverse summary judgment. *Hendricks County Bd. of Comm'rs v. Rieth–Riley Constr. Co., Inc.,* 868 N.E.2d 844, 848–49 (Ind.Ct.App.2007). Thus, on appeal, we must determine whether there is a genuine issue of material fact and whether the trial court has correctly applied the law. *Id.* at 849. In doing so, we consider all of the designated evidence in the light most favorable to the non-moving party. *Id.*

## II. Berkshire's Claims

### A. Summary Judgment—Compliance with Trial Rule 56

Berkshire first contends that the trial court erred in dismissing the action and that it should have granted his motion for summary judgment in its entirety because Logansport's response to the summary judgment motion did not comply with the designation of evidence requirements of Indiana Trial Rule 56(C). Thus, Berkshire argues that Logansport waived its statute of limitations argument and "all other defenses" because it failed to raise those defenses in response to Berkshire's motion for summary judgment. Appellant's Br. p. 6.

██ In *Rosi v. Business Furniture Corp.,* 615 N.E.2d 431, 435 (Ind.1993), our Supreme Court determined that Trial Rule 56 no longer allows parties to rely on the entire record, without designating specific parts, to support or defend against summary judgment motions. To comply with the designation requirement, a party may designate an affidavit either by providing specific page numbers and paragraph citations, or by specifically referring to the substantive assertions relied on. *Van Eaton v. Fink,* 697 N.E.2d 490, 495 (Ind.Ct. App.1998). In other words, designating evidentiary materials in their entirety fails to meet the specificity requirement. *O'Connor by O'Connor v. Stewart,* 668 N.E.2d 720, 722 (Ind.Ct.App.1996). Thus, designating pleadings, discovery materials, affidavits and other evidence in their entirety will fail to meet the specificity required by Trial Rule 56(C). *See AutoXchange.com, Inc. v. Dreyer & Reinbold, Inc.,* 816 N.E.2d 40, 45 (Ind.Ct.App.2004) (stating that Trial Rule 56(C) requires sufficient specificity to identify the relevant portions of a document, and so, for example, the designation of an entire deposition is inadequate).

Berkshire correctly observes that Logansport attached approximately 70 pages of miscellaneous documents that were in Judge Dykeman's estate file to its response to the motion for summary judgment. Indeed, Logansport did not specifically cite or identify any relevant portions of the documents in an effort to defeat Berkshire's claim for summary judgment or to support *its* claim for summary judgment.

On the other hand, the record reflects that Logansport properly raised the issue of the statute of limitations, standing—and other defenses—in its answer and in the motion to dismiss. *See Estate of Edwards,*

562 N.E.2d 763, 764 (Ind.Ct.App.1990) (observing that a statute of limitations defense may be raised by a motion to dismiss for failure to state a claim for relief, if such matters appear on the face of the complaint). As a result, we find *Reiswerg v. Statom*, 926 N.E.2d 26 (Ind.2010), instructive, where our Supreme Court determined that the defendants did not waive a statute of limitations defense when they failed to assert it in response to the plaintiff's motion for partial summary judgment.

In *Reiswerg*, Statom, the plaintiff, sued Cohen, Garelick & Glazier (law firm), and Reiswerg—another attorney who shared office space and performed contract work for the firm—for legal malpractice. Statom underwent surgery at the Veterans Affairs Hospital in Indianapolis and retained Reiswerg to pursue a medical malpractice action against the Department of Veterans Affairs (VA). The VA denied Statom's claim after it determined that her Tort Claims Notice had not been filed in a timely fashion.

After Statom filed her complaint, the law firm and Reiswerg filed their answer and set forth the statute of limitations as an affirmative defense. 926 N.E.2d at 28. Thereafter, Statom moved for partial summary judgment, seeking a determination that the law firm and Reiswerg were "negligent as a matter of law." *Id.* at 28. Neither of the defendants raised the statute of limitations in responding to the motion for summary judgment. Reiswerg and the law firm then moved for summary judgment, asserting that the statute of limitations for legal malpractice had expired before Statom filed her complaint. Statom moved to strike the motion for summary judgment, arguing that both of the defendants had waived the statute of limitations defense because that issue was not addressed in their response to the motion for partial summary judgment. The trial court granted the motion to strike. In reversing,[4] our Supreme Court determined that

> A party responding to a motion for summary judgment is entitled to take the motion as the moving party frames it. The defendants were under no obligation to raise their affirmative defenses in response to the motion for partial summary judgment that Statom presented. A non-movant is not required to address a particular element of a claim unless the moving party has first addressed and presented evidence on that element. [Citations omitted]....
>
> In the case before us today, the affirmative defense of statute of limitations is one on which the non-moving defendants had the burden of proof, but this does not alter the plaintiff's obligation to put in play the issue upon which the plaintiff seeks relief. Here, Statom did not do that. The statute of limitations was asserted as an affirmative defense in the defendants' answers to the complaint. If Statom wished to resolve all issues as to liability by summary judgment, it was her burden to seek summary judgment on liability. She could also have addressed the statute of limitations directly. If she had done either of these, the limitations defense would have been waived if not presented in response to her motion. But she did neither, and therefore did not raise the raise the adequacy of the defendants' affirmative defenses.
>
> [No case] holds that a motion for partial summary judgment on an issue less than liability requires the responding party to

---

4. In the original appeal, we reversed the trial court's order with regard to the law firm, but affirmed the order striking the motion for summary judgment as to Reiswerg. *Reiswerg v. Statom*, 897 N.E.2d 490 (Ind.Ct.App.2008), *trans. granted.*

assert affirmative defenses or any other issue beyond those raised by the relief sought by the moving party.

. . .

Waiver of a contention is effected by the contention's being placed in issue by the movant and the non-movant's failure to raise it. When Statom moved for partial summary judgment on the issue of negligence, neither [defendant] asserted the statute of limitations in response. A non-movant's choice not to assert an affirmative defense as a response to a motion for partial summary judgment that does not implicate the affirmative defense does not bar later assertion of the defense.

926 N.E.2d at 30–31, 33.

■ We recognize that *Reiswerg* is not necessarily on "all fours" with the circumstances presented here. However, given the procedural posture of this case, we find *Reiswerg* instructive and persuasive for the proposition that Logansport did not waive the statute of limitations defense even though it did not advance that defense in responding to Berkshire's motion for summary judgment.

As discussed above, when the trial court granted Berkshire's motion for summary judgment in part on September 4, 2009, regarding the issue of standing and the validity of the Resolution and the provisions of the Will that related to the park, it expressly reserved its ruling on the statute of limitations issue until the hearing on the motion to dismiss. Indeed, Logansport asserted that defense in its answer and in the motion to dismiss. Appellant's Br. p. 12. Moreover, Berkshire did not assert or discuss the applicability of any statute of limitations provision in its motion for summary judgment. In light of these circumstances, we cannot say that Logansport waived its statute of limitations argument.

### B. Standing and the Statute of Limitations

We next address Logansport's contention on cross-appeal that Berkshire lacked standing to pursue the action and Berkshire's claim that the trial court erred in granting his motion to dismiss because the statutes of limitations barred his action. Logansport maintains that Berkshire was not the "real party in interest" to dispute the method by which Dykeman Park was administered and contends that if there was any violation of the agreement, it was the "Mary Dykeman Hospital" and the executor of Judge Dykeman's estate that had the "real" interest in the issue. Appellees' Br. p. 7, 9. Moreover, Logansport claims that Berkshire cannot pursue his action under the public standing doctrine because no public right is implemented that is common to the general public. As a result, because neither Judge Dykeman's estate nor his heirs brought an action to retake the property in light of the alleged improper operation of the park, Logansport asserts that Berkshire cannot prevail.

Because Berkshire has filed an action for mandate, we note that Indiana Code section 34–27–3–1 provides that

1. An action for mandate may be prosecuted against any inferior tribunal, corporation, public or corporate officer, or person to compel the performance of any:

 (1) act that the law specifically requires; or

 (2) duty resulting from any office, trust, or station.

■ Contrary to Berkshire's claim, an action for mandate does not confer automatic standing upon a plaintiff. Indeed, this court has determined that a plaintiff seeking a mandate must show actual injury by the challenged governmental action. *See Aikens v. Alexander,* 397 N.E.2d 319, 323 (Ind.Ct.App.1979) (holding that the

plaintiffs, who brought suit in mandamus to compel the payment of sums to the Public Employees' Retirement Fund (PERF), lacked standing because none were eligible to receive payments from PERF when the suit was filed).

 With regard to Logansport's claim that Berkshire lacked standing to bring the action, we note that in *Cittadine v. Ind. Dep't of Transp.*, 790 N.E.2d 978, 980 (Ind.2003), a private citizen petitioned for a writ of mandamus to require the state transportation agency to enforce a statute against the railroad and any other railroad that violated a statute that required railroads to maintain public crossings under their control in a certain manner. In reversing the trial court's determination that the petitioner lacked standing to bring the claim, as well as this court's decision affirming the trial court,[5] our Supreme Court determined that the claim involved the enforcement of a public right. Therefore, the claim was cognizable under the public standing doctrine and the *Cittadine* court observed that

> The public standing doctrine, which applies in cases where public rather than private rights are at issue and in cases which involve the enforcement of a public rather than a private right, continues to be a viable exception to the general standing requirement. The public standing doctrine permits the assertion of all proper legal challenges, including claims that government action is unconstitutional.
>
> . . .
>
> Cittadine commenced this action on August 30, 2000, as a member of the motoring public, seeking to require INDOT to enforce, against Michigan Southern and

other railroads in the state, Indiana Code § 8–6–7.6–1 (1998), which expressly prohibited railroads from allowing obstructions to block motorists' views for a distance of 1500 feet in each direction of an intersection of public roadways with railroad tracks. The trial court initially granted his request for an emergency writ of mandamus but, following a full evidentiary hearing, denied the petition for a permanent writ on September 19, 2000, on grounds other than lack of standing. Record at 257–58. The Court of Appeals affirmed, but on grounds that Cittadine lacked standing to bring the action. We conclude that Cittadine's claim, which involves the enforcement of a public right, qualifies for the public standing doctrine. His action is thus not prevented by the requirement that he have an interest in the outcome of the litigation different from that of the general public.

*Id.* at 983–84.

Applying the principles set forth in *Cittadine*, we cannot say that Berkshire—and perhaps other Logansport citizens similarly situated—have no interest in the proper administration of Dykeman Park. Indeed, it is apparent that a public right, i.e., the enjoyment of Dykeman Park, is at issue because the Resolution states that Judge Dykeman's property was "accepted by the Mayor for and on behalf of the City of Logansport" and "shall forever be and remain a public park." Appellant's App. p. 128–31. Hence, it appears—at least at first blush—that Berkshire was entitled to maintain his action in accordance with *Cittadine* and the public standing doctrine.

However, our inquiry does not stop here. Indeed, even assuming that the trial

---

**5.** *State ex rel. Cittadine v. Ind. Dep't of Transp.*, 750 N.E.2d 893 (Ind.Ct.App.2001), *trans. granted.*

court properly determined that Berkshire could bring an action against Logansport under the public standing doctrine, we also consider the various statutes of limitations provisions to which the parties direct us. Indiana Code section 34–11–2–11 provides that:

> An action upon contracts in writing other than those for the payment of money, and including all mortgages other than chattel mortgages, deeds of trust, judgments of courts of record, and for the recovery of the possession of real estate, must be commenced within ten (10) years after the cause of action accrues. However, an action upon contracts in writing other than those for the payment of money entered into before September 1, 1982, not including chattel mortgages, deeds of trust, judgments of courts of record, or for the recovery of the possession of real estate, must be commenced within twenty (20) years after the cause of action accrues.

Additionally, Indiana Code section 34–11–1–2 states that

(a) A cause of action that:

> (1) arises on or after September 1, 1982; and

> (2) is not limited by any other statute; must be brought within ten (10) years.

(b) A cause of action that:

> (1) arises before September 1, 1982; and

> (2) is not limited by any other statute; must be brought within fifteen (15) years.

(c) This section does not apply whenever a different limitation is prescribed by statute.

In accordance with these provisions, Berkshire argues that because Logansport failed to perform the "clear duty" of operating Dykeman Park pursuant to Judge Dykeman's directive and the Resolution, no statute of limitation has barred his claim. Moreover, because Berkshire is a member of the public, he maintains that he should be permitted to bring the action because he seeks the enforcement of charitable trust,[6] which is continuing in nature. *See Forth v. Forth,* 409 N.E.2d 641, 644 (Ind.Ct.App.1980) (observing that periods of limitation do not run in express trusts until the trustee openly disavows or repudiates the trust and clearly and unequivocally sets up a right and interest adverse to the beneficiary, which fact is made known to the beneficiary). Thus, because Berkshire is seeking injunctive relief and no money damages, he argues that his claim has not yet accrued because Logansport has never repudiated the remaining trust provisions by either selling or giving away the property.

 Notwithstanding Berkshire's claim, it is clear that any alleged breach of the Resolution was not asserted until 2009. As discussed above, the property was deeded to Logansport under the Will in 1914, and the written agreement was executed that same year. Although Logansport agreed to abide by the terms of the Will, it never had a group of three commissioners that were appointed in accordance with the procedure that was agreed upon, other than the Board that was created by law. The deal was to be completed within three years thereafter when replacement commissioners were to be appointed. Thus, assuming for the sake of argument that the Board with its three members

---

**6.** A charitable trust is a trust in which all the beneficiaries are the general public or organizations, including trusts, corporations, and associations, and that is organized and operated wholly for religious, charitable, scientific, public safety testing, literary or educational purposes. Ind.Code § 30–4–1–2(5).

administering Dykeman Park was not the proper replacement board under the agreement, the maximum available twenty-year statute of limitations began to run on February 2, 1917. I.C. § 34–11–2–4. Alternatively, even if Berkshire could maintain that the transfer of Dykeman Park to the Board in 1979 and the appointment of the five-member Board constituted the violation, the twenty-year period expired in 1999, which was ten years before Berkshire instituted the action. Thus, his claim is also barred under this theory.[7]

To further illustrate, in *St. Mary's Medical Center, Inc. v. McCarthy*, 829 N.E.2d 1068 (Ind.Ct.App.2005), the issue was whether St. Mary's could demolish a chapel on its campus that was constructed in the 1950s with funds that were provided by the estate of one of the plaintiff-appellee's relatives. More specifically, a trust committee decided to use certain trust funds that the decedent, Haney, left for the use and benefit of the hospital, to build a chapel at St. Mary's. *Id.* at 1071. The chapel was completed in 1956, and in 2003, St. Mary's determined that the chapel should be demolished because it desired to expand the hospital facilities. McCarthy, a grandson of one of the trust committee members, filed a complaint for declaratory judgment and permanent injunction to prevent the demolition of the chapel. The trial court granted the injunction and St. Mary's appealed. *Id.*

In reversing the trial court, we relied in part on our Supreme Court's holding in

*Higbee v. Rodeman*, 129 Ind. 244, 28 N.E. 442 (1891). In *Higbee*, the court considered the effect of a donation of real estate to a township with the condition that it be used for school purposes. It was determined that even if a valid condition subsequent existed—which the court doubted—the township substantially complied with the condition by using the property for school purposes for thirty years and that it could then sell the property. *Id.* at 247, 28 N.E. at 443.

We also considered the circumstances in *General Convention of New Church in U.S. v. Smith*, 52 Ind.App. 136, 100 N.E. 384 (1913), where the decedent bequeathed $2,000 and some real estate to his brother, which directed the brother to use the funds to build a library for the benefit of a church organization. The brother died twenty years after the library was built and his heirs sought to recover the property over the objections of the church organization. Although the *New Church* court was skeptical that the brother was intended to hold the property in trust for the church organization, it was determined that even if there had been a trust

> the purposes of the bequest were fully carried out by the erection of this building of which plaintiffs had the use and benefit for nearly 20 years, and it does not appear that they are still entitled to its use and benefit. In other words, it does not appear that the trust, if any

---

7. As an aside, we note that Berkshire suggests that a form of the "discovery rule" applies in this instance because he only became aware of the Dykeman trust approximately two years ago when he read a copy of the Logansport City Code. Although this is not a case where the State has taken private property for public use, we note that in *Murray v. City of Lawrenceburg*, 925 N.E.2d 728 (Ind.2010), our Supreme Court determined that an action for inverse condemnation is the sole remedy for a governmental act that purports to exercise all rights of ownership over a parcel of land. Moreover, *Murray* expressly held that a six-year statute of limitations in accordance with Indiana Code section 34–11–2–7(3) for trespass applies to such claims. 925 N.E.2d at 733. The *Murray* court also rejected the plaintiffs' suggestion that a "discovery rule" should apply to its cause of action. *Id.* at 734 n. 1.

was created, has not been fully terminated.

*Id.* at 138, 100 N.E. at 385. And in *St. Mary's*, we further observed that

> [I]n looking at the four corners of Haney's will there is nothing expressing an intent that St. Mary's was to hold any assets bequeathed to it as a charitable trust. There also is nothing in the will indicating the existence of a valid condition subsequent upon the bequest. *There is no indication the trust committee created by Haney's will imposed any such condition or created a second trust with St. Mary's as trustee. Finally, even if there was a charitable trust or valid condition subsequent, St. Mary's use of the chapel for nearly fifty years represents substantial compliance with any such trust or condition.*

*Id.* at 1077 (emphasis added).

In *Higbee,* a condition subsequent and the sale of the property were at issue, unlike the circumstances here. Indeed, the Will designated an alternate location for the land and the proceeds of its sale if Logansport refused to accept the property within three years following Judge Dykeman's death. Appellant's App. p. 185. More particularly, the proposed park property was to become part of the fund that was provided for the support of the "Mary Dykeman Hospital" and was to be sold by the executor of Judge Dykeman's estate. *Id.* And, as discussed above, the issues regarding Judge Dykeman's grant of his residuary estate in trust for the purpose of building a hospital in his wife's name has been previously litigated. Although the executor of Judge Dykeman's estate or that charitable trust to create a hospital could have brought an action against Logansport to take the land back because a group of three park commissioners was never installed, they did not.

Finally, we note that Berkshire does not dispute that Logansport has satisfied two of the three contract terms, in that the park has always been designated as "Dykeman Park" and Logansport has spent amounts in excess of $1500 per year on improvements to the park. *Id.* at 53. Thus, it is reasonable to conclude that Logansport's operation of Dykeman Park for over ninety years has amounted to substantial compliance with the agreement and the provisions of the Will. Even more compelling, it is apparent that Logansport has fulfilled Judge Dykeman's intent as a result of its agreement to establish and operate the park. As a result, the trial court properly granted Logansport's motion to dismiss Berkshire's action.

## CONCLUSION

In light of our discussion above, we conclude that even though Berkshire and similarly-situated Logansport citizens might have had standing at some point to challenge the manner in which Logansport operated and controlled Dykeman Park, we applaud the trial court's commonsensical approach to this case. Aside from the failure to manage and control Dykeman Park by three Park Commissioners, Logansport complied with the directives that Judge Dykeman set forth in the Will. And Judge Dykeman's heirs and/or his estate never sought to enforce the specific provisions of the agreement with Logansport regarding the park's management. Thus, given these circumstances, we cannot say that Logansport's continuous operation of Dykeman Park in the manner in which it has for the past ninety-plus years is fatal to its future management and control of the park. The theories that Berkshire has advanced supports the trial court's conclusion that his cause of action against Logansport is time-barred.

The judgment of the trial court is affirmed.

DARDEN, J., and CRONE, J., concur.