RILEY, Judge.

STATEMENT OF THE CASE

[1] AppellanMPlaintiff, Mary Price (Price), on her own behalf and on behalf of a class of those similarly situated, appeals the trial court’s grant .of Appellees-Defen-dants’, Indiana Department- of Child Services; Director, Indiana Department of Child Services (collectively, DCS), motion for dismissal of Price’s Complaint for failing to state a claim for relief pursuant to Indiana Trial Rule 12(b)(6).[1]
[2] We affirm, in part, reverse, in part, and remand.

ISSUES

[3] Price raises two issues on appeal, which we restate as:
(1) Whether Price has a private right of action to enforce the maximum caseload standard included in Indiana Code section 31-25-2-5; and
(2) Whether Price’s Complaint states a claim for relief as an action for mandate.

*20
FACTS AND PROCEDURAL HISTORY

[4] Under Indiana law, the DCS is charged with the responsibility of providing various services to protect children and to strengthen families. The family case managers (FCMs), employed by the DCS, are “the backbone of Indiana’s child welfare system” and the key components in safeguarding the safety of Indiana’s children. (Appellant’s App. p. 4). They are responsible for, among other things, investigating reports of abuse or neglect of children in Indiana, ongoing case management services if the reports indicate that abuse or neglect actually occurred, providing family support services to strengthen families to help assure that abuse or neglect will not recur, and offering adoption or other permanency services if children cannot safely be returned to. their homes. Some FCMs may only provide initial assessments, while others are permanency workers who monitor and supervise active cases after abuse or neglect is substantiated. In smaller counties, one FCM may often perform both functions.
[5] Indiana Code section 31-25-2-5 provides, in part, referring to DCS as “the department,” that:
(a) The department shall ensure that the department maintains staffing levels of family case managers so that each region has enough family case managers to allow caseloads to be at not more than:
(1) Twelve (12) active cases relating to initial assessments, including investigations of an allegation of child abuse or neglect; or
(2) Seventeen (17) children monitored and supervised in active cases relating to ongoing services.
(b) The department shall comply with the maximum caseload ratios described in subsection (a).
This statutory requirement is further emphasized by Indiana Code section 31-25-2-10, which clarifies:
(a) This section applies after June 30, 2008.
(b) The department of child services:
(1) must have sufficient qualified and trained staff to;
(A) fulfill the purpose of this article;
(B) comply with the maximum caseload ratios for:
(i) Family case managers; and
(ii) Child welfare caseworkers; as set forth in [I.C. § ] 31-25-2-5.
[6] Price is currently employed by DCS in Marion County as a permanency worker. Therefore, pursuant to the statute, her caseload should be limited to no more than 17 children. However, in the past four years, Price’s caseload has “always greatly exceeded] this number” and at the time of filing the Complaint amounted to “approximately 43 children.” (Appellant’s App. p. 25). In its 2014 Annual Report to the State Budget Committee and Legislative Council, the DCS reported that it would need to employ an additional 216.2 FCMs to comply with the caseload standards mandated by Indiana law. Although additional money was appropriated to hire more FCMs during the 2015 legislative session, insufficient money was made available to allow the mandated statutory caseload standards to be achieved.
[7] Because of the increasing caseload, Price and other FCMs work much longer than a 40-hour week in an effort to keep up with their cases. Due to the excessive caseload, turnover among the FCMs has become a serious problem as they “frequently leave to find employment that is less stressful and demanding.” (Appellant’s App. p. 26).
[8] On July 14, 2015, Price filed her Verified Class Action Complaint for Man *21 date and Injunctive and Declaratory Relief, contending that DCS violated Indiana Code section 31-25-2-5 by failing to ensure that the department meets the FCM standards mandated by statute. Price requested the court to enter an order mandating or enjoining DCS to take all steps necessary to comply with Indiana Code section 31-25-2-5. On July 16, 2015, she filed her motion asking to certify the case as a class action, with the class defined as all FCMs employed by the DCS.
[9] On September 9, 2015, DCS filed its motion to dismiss for failure to state a claim for relief pursuant to Indiana Trial Rule 12(b)(6) and supporting memorandum, arguing for the dismissal of the cause because Price and the putative class cannot enforce the explicit caseload standards contained in the statute. Price responded on September 30, 2015, claiming that a cause of aetion to enforce the statute existed but that, in any event, she also had a claim for mandate. In its reply of October 13, 2015, DCS rejected the mandate.
[10] On January 6, 2016, the trial court conducted a hearing on DOS’s motion for dismissal. During the hearing, DCS contended, for the first time, that mandate is not appropriate because Price had an adequate remedy at law in Indiana’s Civil Service Complaint procedure. On February 22, 2016, the trial court granted DOS’s motion and dismissed Price’s complaint. The trial court concluded that no private right of action existed under Indiana Code section 31-25-2-5 because the protections included in the statute are for the benefit of the general public. “Any benefit gained by [FCMs] through compliance with I.C. § 31-25-2-5 is ancillary or- secondary to that purpose.” (Appellant’s App. p. 17). Secondly, the trial court held that Price and the putative class of FCMs could not bring an action for mandate because they had an adequate remedy at law through the Civil Service Complaint procedure.
[11] Price now appeals. ' Additional facts will be provided as necessary.

DISCUSSION AND DECISION

I. Standard of Review
[12] The standard of review on appeal of a trial court’s grant of a motion to dismiss for the failure to state a claim is de novo and requires no deference to the trial court’s decision. Bellows v. Bd. of Comm’rs of County of Elkhart, 926 N.E.2d 96, 110 (Ind.Ct.App.2010). The grant or denial of a motion to dismiss turns only on the legal sufficiency of the claim and does not require determinations of fact. Id. “ ‘A motion to dismiss under Rule 12(B)(6) tests the legal sufficiency of a complaint; that is, whether the allegations in the complaint establish any set of circumstances under which a plaintiff would be entitled to relief.’ ” Id. (quoting Lei Shi v. Cecilia Yi, 921 N.E.2d 31, 36 (Ind.Ct.App.2010)). Thus, while we do not test the sufficiency of .the facts alleged with regard to their adequacy to provide recovery, we do test their .sufficiency with regards to whether or not they have stated some factual scenario in which a legally actionable injury has occurred. Id,
II. Private Cause of Action
[13] Price first contends that the trial court abused its discretion when it concluded that Indiana Code section 31-25-2-5 only conferred a public benefit, and did not grant her a private cause of action, Although Price does not dispute the public benefits derived from the statute, she argues that the statute also awarded a private cause ,of action- because
{i]f [Price], and the other FCMs have caseloads , that-are manageable they will .be able to perform their duties. They *22 will not have to work overtime to try to keep up with their work. They will not suffer “burnout” and quit. These are all direct, private [ ] benefits to the FCMs. The fact that the FCMs will have better working conditions if DCS complies with the statute will inure directly to the public, but it will also bestow a clear and identifiable private benefit on the FCMs.
(Appellant’s Br. p. 22).
[14] When a civil cause of action is premised upon a violation of a duty imposed by statute, the initial question to be determined by the court is whether the statute confers a private right of action. Lockett v. Planned Parenthood of Ind., Inc., 42 N.E.3d 119, 127 (Ind.Ct.App.2015), trans. denied. To find the existence of a civil cause of action, we first examine legislative intent. Id. We ascertain whether the statute is designed to protect the general public and whether the statutory scheme contains an enforcement mechanism or remedies for violation of the duty. Id. A private party generally may not enforce rights under a statute designed to protect the public in general and containing a comprehensive enforcement mechanism. Id. Whether a statute creates a private right of action is a question of law for the court. Id.
[15] Contending that I.C. § 31-25-2-5 combines a public right of action with a private benefit, Price relies on Whinery v. Roberson, 819 N.E.2d 465 (Ind.Ct.App.2004), trans. dismissed, and Galloway v. Hadley, 881 N.E.2d 667 (Ind.Ct.App.2008). In both cases, this court noted that “statutes that confer public and private benefits ... establish a private cause of action. Indeed, it makes little sense to preclude recovery for violations of specific rights merely because the public receives an ancillary benefit from the statute conferring the rights.” Whinery, 819 N.E.2d at 475; Galloway, 881 N.E.2d at 672. Applied to I.C. § 31-25-2-5, Price asserts that “the general benefit to the public flows directly from the private benefit that the statute provides to the FCMs.” (Appellant’s Br. p. 22). We disagree.
[16] “[W]hen the legislative purpose is general in nature, the mere fact that statutory language refers to a class of people does not create a private cause of action.” Americanos v. State, 728 N.E.2d 895, 898 (Ind.Ct.App.2000), trans. denied. Examining the legislative intent, we conclude that the imposition of caseload requirements was intended to protect the public in general through the consistent, efficient, and effective administration of DOS’s services. Although it is undeniable that Price and the other FCM’s will benefit from a manageable caseload, our legislature’s main consideration in enacting the statute was to protect the children and families in our society. In order to promote this public duty of protection, the legislature sought to ensure an agreeable work environment for FCMs. Therefore, as no duty for a particular individual’s benefit was imposed, no private cause of action flows from I.C. § 31-25-2-5.
III. Mandate
[17] In an attempt to bring the DCS into compliance with its statutory duty encapsulated in I.C. § 31-25-2-5, Price also claims the right to bring a mandate action to compel the DCS to comply with the duty it is shirking, i.e., to maintain the prescribed staffing levels.
[18] Indiana Code section 34-27-3-1 provides:
An action for mandate may be prosecuted against any inferior tribunal, corporation, public or corporate officer, or person to compel the performance of any: (1) act that the law specifically requires; or
*23 (2) duty resulting from any office, trust, or station.
“An action for mandate, an extraordinary remedy of an equitable nature, is generally viewed with disfavor.” Hayes v. Trustees of Ind. Univ., 902 N.E.2d 303, 315 (Ind.Ct.App.2009) (quoting Perry v. Ballew, 873 N.E.2d 1068, 1072 (Ind.Ct.App.2007)), trans. denied. Mandamus cannot be invoked unless the petitioner has a clear and unquestioned right to relief and the respondent has failed to perform a clear, absolute, and imperative duty imposed by law. Id. “[T]he mandamus action does not lie to establish a right or to define and impose a duty.” Id. Public officials, boards, and commissions may be mandated to perform ministerial acts when under a clear legal duty to perform such acts. Id. Stated another way, a mandate order will not be granted to control the discretionary action of a public officer, board, or commission. Harmony Health Plan of Ind., Inc., v. Ind. Dep’t of Admin., 864 N.E.2d 1083, 1089 (Ind.Ct.App.2007). “[A]n honest exercise of that discretion will not .be disturbed by the courts.” Id.
A. Standing
[19] It should be mentioned that an action for mandate does not confer automatic standing upon a plaintiff. We have previously determined that a plaintiff seeking mandate must show actual injury by the challenged governmental action. State ex rel. Berkshire v. City of Logansport, 928 N.E.2d 587, 597 (Ind.Ct.App.2010), trans denied.
[20] Even though no private cause of action exists to enforce I.C. § 31-25-2-5, in Cittadine v. Ind. Dep’t of Transp., 790 N.E.2d 978, 980 (Ind.2003), our supreme court reaffirmed-the continued vitality of Indiana’s public standing doctrine:
The public standing doctrine, which applies in cases where public rather than private rights áre at issue and in cases which involve the enforcement of a public rather than a private right, continues to be a viable exception to the general standing requirement. - The public standing doctrine permits the asserting of all proper legal challenges, including claims that government action is unconstitutional.
Although the supreme court did not define “public right” in this context, it cited several examples where a public right was found to exist. See, e.g., Miller v. City of Evansville, 244 Ind. 1, 189 N.E.2d 823 (1963) (resident-taxpayer has a public right where city’s waterworks department was allegedly not authorized to contract for construction of equipment for fluoridation of public drinking water); Davis Const. Co. v. Bd. of Comm’rs of Boone Co., 192 Ind. 144, 132 N.E. 629 (1921) (taxpayer had public right where allegedly unconstitutional statute sought to impose property tax in district in which he lived and owned property subject to assessment); Brooks v. State, ex rel. Singer, 162 Ind. 568, 70 N.E. 980 (1904) ‘(citizen-voter of Ripley County had a public interest-in the constitutional apportionment of senators and representar tives throughout' the state); Hamilton v. State ex rel. Bates, 3 Ind. 452 (1852) (citizen-taxpayer of Marion County has a public interest in the county auditor correctly discharging the duties of his office).
[21] Just like the public interest found to exist and confer standing in Citta-dine and other case law referenced, rights created under I.C. § 31-25-2-5 are public and confer public standing on Price. The purpose of -the -statutorily defined maximum caseload ratios is to provide protections to the general public through consistent, efficient, and effective administration of child and family services. According *24 ly—and the State does not contest—Price, as member of the general public, can avail herself of the statute through the public standing doctrine.
B. Exhaustion of Remedies ,
[22] Because the issuance of a mandate is an extraordinary remedy, where an adequate remedy at law is available, mandate should not be imposed to compel performance of an act. Whitney v. Bd. of Sch. Trustees of DeKalb Co. Eastern Cmty. Sch. Dist., 416 N.E.2d 1289, 1292 (Ind.1981). As such, “[t]he mandate itself is meant to accomplish what cannot otherwise be accomplished through ordinary legal or equitable remedies.” Ind. Revenue Bd. v. State ex rel Bd. of Comm’rs of Co. of Hendricks, 270 Ind. 365, 385 N.E.2d 1131, 1134 (1979).
[23] Within the arena of administrative agencies, like here, “[t]here exists a strong bias in the case law in favor of the requirement that administrative remedies be exhausted.” Smith v. State Lottery Comm’n of Ind., 701 N.E.2d 926, 931 (Ind.Ct.App.1998), trans. denied. The objective of such a requirement is to avoid collateral, dilatory action, ensure the efficient, uninterrupted progression of administrative proceedings and the effective application of judicial review, and provide an agency with an opportunity to correct its own errors and to compile a factual record as necessary for judicial review. Id.
[24] Nevertheless, exceptions to the requirement of exhaustion of remedies at the agency level exist. A party is excepted from the exhaustion requirement when the remedy is inadequate or would be futile, or when some equitable consideration precludes application of the rule. Ind. State Building & Constr. Trades Council v. Warsaw Cmty. Sch. Corp., 493 N.E.2d 800, 806 (Ind.Ct.App.1986). To prevail upon a claim of futility, “one must show that the administrative agency was powerless to effect a remedy or that it would have been impossible or fruitless and of no value under the circumstances.” Id. Also, the requirement of exhaustion of administrative remedies “will be relaxed where there is grave doubt as to the availability of the administrative remedy.” Ind. High Sch. Athletic Ass’n v. Raike, 164 Ind.App. 169, 329 N.E.2d 66, 82 (1975).
[25] Focusing on the exhaustion requirement, the trial court noted:
In this case, the [c]ourt finds that an adequate remedy at law exists to enforce caseload requirements under Article 25 for Caseworkers under Indiana’s Civil Service Complaint" procedure established under I.C. § 4-15-2.2-42. I.C. § 4-15-2.2-42 allows state employees, such as Price, to file a complaint concerning a Department’s application of a law, rule, or policy and establishes a procedure for resolution, including a mechanism for reconsideration of the initial findings by the Director of State Personnel' and an appeal of the decision to the State Employee Appeals Commission (“SEAC”). The decisions of SEAC concerning the resolution of the complaint are subject to legal review in accordance with I.C. [Ch] 4-21.5-3. The Legislature established this complaint procedure to provide state employees a fair process to resolve complaints concerning the “application of a law, rule, or policy to the complainant.”
(Appellant’s App. p. 19) (emphasis in original) (internal citations omitted). Because the trial court concluded that Price had not exhausted the administrative remedy of the Indiana’s Civil Service Complaint procedure, the trial court dismissed Price’s complaint.
[26] The Indiana Civil Service Complaint procedure, as defined in I.C. § 4- *25 15-2.2-42(a), provides that “[a]n employee in the state civil service system may file a complaint concerning the application of a law, rale, or policy to the complainant.” This complaint must be filed “as soon as possible after the occurrence of the act or condition complained of, and not later than thirty (30) calendar days after the employee became aware or by the exercise of reasonable diligence should have been aware, of the occurrence giving rise to the complaint.” I.C. § 4-15-2.2-42(c). The complaint must be filed with the “appointing authority,” which is defined as “the head of a department, division, board or commission, or an individual or group of individuals who have the power by law or by lawfully delegated authority to make appointments to positions in the state civil service.” I.C. § 4-15-2.2-2. An appeal may be taken to the State personnel director, and a final administrative appeal is available to the State Employees Appeals Commission. I.C. § 4-15-2.2-2(e). After exhaustion of these administrative remedies, a judicial review may be requested. 1.C. § 4-15-2.2-2(h).
[27] Accordingly, the administrative procedure is geared towards the resolution of “acts or conditions” which include the “application of a law, rale, or policy” with respect to the complainant. See I.C. § 4-15-2.2-42(a) & (c). As we noted in Abner v. Dep't of Health of State of Ind. ex rel. Ind. Soldiers’ & Sailors’ Children’s Home, 777 N.E.2d 778, 782 (Ind.Ct.App.2002), trans. denied, these terms must be given a “liberal construction.” While the caseload ratio is arguably a condition which entails the application of a statute, we agree with Price that the matter before us concerns a systemic deficiency which is not unique to her but is experienced by hundreds of ease workers in Indiana.
[28] A review of the case law of the State Employees Appeals Commission reveals that its usual issues pertain to individual employment related acts, such as employee termination (see, e.g., Westville Correctional Facility v. Finney, 953 N.E.2d 1116 (Ind.Ct.App.2011)); equal pay (see, e.g., Indiana State Employees Appeal Comm’n v. Bishop, 721 N.E.2d 881 (Ind.Ct.App.1999); Ind. State Employees’ Appeals Com’n v. Greene, 716 N.E.2d 54 (Ind.Ct.App.1999)); reinstatement of employees (see e.g., Evansville State Hosp. v. Perry, 549 N.E.2d 44 (Ind.Ct.App.1989); and retirement annuity) (see, e.g., State v. Young, 855 N.E.2d 329 (Ind.Ct.App.2006)). In Ahles v. Orr, 456 N.E.2d 425, 426 (Ind.Ct.App.1983), we noted that the “subjects addressed by the administrative procedures prescribed in” I.C. § 4-15-2.2-42[2] are “complaints relating to involuntary changes in employment or claimed unsatisfactory working conditions[.]” The systemic challenge brought by Price falls outside the boundaries of this administrative appeals procedure and must be addressed by the judicial system. It is undeniable that the administrative tribunals cannot order the Governor to take action or order the legislature to comply with its own statute. “[C]ourts have recognized the futility of exhaustion where a plaintiff do[es] not challenge an individual ... decision by the [agency] where agency expertise would be important but instead challenges the agency’s policy, pattern, and practice or systemic failure to comply with federal law.” Lazaridis v. Social Sec. Admin., 856 F.Supp.2d 93, 98 (D.D.C. Apr.19, 2012). Therefore, “[i]f the administrative procedure is incapable of offering a remedy for *26 a party’s complaint and is- incapable of addressing the issues presented by a party’s claim, exhaustion is not required.... ‘When the character of the question presented is beyond the pale of the agency’s competency, expertise, and authority, failure to exhaust will be excused.’ ” Rene ex. rel. Rene v. Reed, 726 N.E.2d 808, 819 (Ind.Ct.App.2000) (quoting Rambo v. Cohen, 587 N.E.2d 140, 144 (Ind.Ct.App.1992), trans. denied). Accordingly, we cannot conclude that Price’s complaint falls within the purview of the “acts or conditions” that Indiana’s CM Service Complaint procedure addresses. Therefore, no adequate remedy is available.
C. Clear Duty Imposed by Law
[29] However, even though the DCS failed to formulate an explicit response to Price’s systemic deficiencies’ argument, DCS argues that mandate is inappropriate because any order by the court Would entail a violation of the separation of powers doctrine and dictate the performance of discretionary agency acts. Specifically, DCS argues that in order to employ more staff to satisfy the statutory caseload standard established in I.C. § 31-25-2-5, the legislature and Governor will have to be ordered to free up funding and to engage in specific discretionary acts. We disagree.
[30] The statutory caseload máx-imums included in I.C. § 31-25-2-5(a) & (b) are not an aspirational goal but are a clear and definite number to attain. The statute declares, in pertinent part:
(a) The department shall ensure that the department maintains staffing levels of family case managers so that each region has enough family case managers to allow caseloads to be at not more than:
(3) Twelve (12) active cases relating to initial assessments, including investigations of an allegation of child abuse or neglect; or
(4) Seventeen (17) children monitored and supervised in active cases relating to ongoing services.
(b) The department shall comply with the maximum caseload ratios described in subsection (a). ■
I.C. § 31-25-2-5 (emphasis added). By phrasing the statute in mandatory language, it could not be more specific or absolute. “When the word ‘shall’ appears in a statute, it is construed as mandatory rather than directory unless it appears from the context or the purpose of the statute that the legislature intended a different meaning.” City of Wabash v. Wabash Co. Sheriff’s Dep’t, 562 N.E.2d 1299, 1301 (Ind.Ct.App.1990). And, “absent any legislative direction to the contrary, ‘must’ means ‘must.’ ” In re Resnover, 979 N.E.2d 668, 677 (Ind.Ct.App.2012).
[31] In her Complaint, Price merely requests that the DCS be mandated to comply with its legal duties, ie., the caseload máximums. How DCS accomplishes this is up to the agency.[3] “Courts may and sometimes do exercise authority to compel public officials to act in matters *27 where discretion is involved, but they do not undertake to control the discretion.” Ind. State Highway Comm’n v. Zehner, 174 Ind.App. 176, 366 N.E.2d 697, 701 (1977) (see, e.g., Ind. Alcoholic Beverage Comm’n v. State ex rel. Harmon, 269 Ind. 48, 379 N.E.2d 140, 146 (1978) (although the Alcoholic Beverage Commission has discretion as to whether or not to issue a liquor license, it can be compelled to take action on an application)). Thus, contrary to the DCS’ argument, Price is not requesting an order that invades the province of the other branches of government but rather wants the DCS to merely comply with the statute. As such, the mandate action is directed at the clear statutory duty, not at the DCS’s discretion.
[32] Accordingly, as Indiana Code section 31-25-2-5 imposes a clear, absolute, and imperative duty on DCS to comply with maximum caseload standards as determined by the legislature and no administrative remedy is available to address this systemic violation of Indiana law, we conclude that Price can proceed with a mandate action. We therefore reverse the trial court’s order to dismiss with respect to the mandate and remand for further proceedings.

CONCLUSION

[33] Based on the foregoing, we conclude that even though Price has no private case of action under I.C. § 31-25-2-5, Price’s Complaint states a claim for relief as an action for mandate.
[34] Affirmed in part, reversed in part, and remanded.
[35] ROBB, J., concurs in part and concurs in result in part with separate opinion.
[36] KIRSCH, J., concurs in part and dissents in part with separate opinion.

. We heard oral argument in this cause on July 20, 2016, at the Indiana Supreme Court Courtroom in Indianapolis, Indiana. We commend counsel for their excellent advocacy and well-written appellate briefs.

. Ahles refers to I.C. § 4-15-2-35, which has been repealed. The current version of the statute is I.C, § 4-15-2.2-42.

. DCS argues that it will be impossible to enforce compliance with the statute as
[i]t would be impractical for the trial court to establish a deadline because DCS’s compliance with the statute relies on a key external factor that is out of DCS’s control—the number of people able and willing to work as an FCM. Moreover, other external factors come into play, such as DCS's need to obtain sufficient funding to hire the necessary people and the number of active cases remaining steady or declining.
(Appellee’s Br. p. 43). However, these arguments are directed at a possible future defense DCS might have against claims that it did not comply with a mandate order. An appeal from a grant of a motion to dismiss is not the place to consider such possible defenses.'’ The uncertain possibility of such a future eventuality does not militate against *27 the fact that DCS is under a specific duty today to abide by definite caseload standards.