**Mike PERRY, City of Charlestown Sewer Department, Appellants–Defendants,**

v.

**Jesse BALLEW, Appellee–Plaintiff.**

**No. 10A04–0701–CV–42.**

Court of Appeals of Indiana.

Sept. 20, 2007.

David A. Lewis, Jeffersonville, IN, Attorney for Appellants.

Daniel E. Moore, Jeffersonville, IN, Attorney for Appellee.

## OPINION

BARNES, Judge.

### Case Summary

Mike Perry, the Wastewater Services Director for the City of Charlestown, and the City of Charlestown Sewer Department (collectively, "the Sewer Department") appeal the trial court's granting of an emergency petition for mandate filed by Jesse Ballew. We reverse.

### Issue

The Sewer Department raises three issues, which we consolidate and restate as

whether the trial court properly granted Ballew's petition for mandate.

### Facts

Ballew owns a home located on Locust Street in Charlestown and is selling the home on contract. In 2006, Ballew had repeated problems with the home's septic system. Ballew made several requests of the Sewer Department to issue a permit allowing him to tap into the nearby sewer line. According to Ballew, the sewer line was fifty to eighty feet from the Locust Street property. The Sewer Department rejected Ballew's request based on technical concerns because "the lift station and the eight (8) inch force main sewer line were not engineered to accommodate individual wastewater customers tapping directly into the force main." Exhibit 5.

On June 29, 2006, a complaint was filed with the Clark County Health Department ("Health Department") regarding the septic system problems. On September 21, 2006, after inspection, the Health Department sent Ballew a letter indicating that the improperly functioning septic system was in violation of the Clark County Sanitary Code.

The letter referenced Section 6–1–1 of the Code, which provided in part:

> (B) Any persons or owner or person in possession of any property located within Clark County, Indiana and which property is, or is proposed to be, served by an on site sewage disposal system or privy, shall cause a direct connection to be made to any public sanitary sewage system when such a public system is available within 150 feet of the property line, after which all such on-site sewage disposal systems, septic tanks, seepage pits, outhouses, privy pits or similar private sewage disposal or treatment facilities shall be abandoned and filled in a safe and sanitary manner.

Exhibit 3. In its letter, the Health Department acknowledged that the attorney for the City of Charlestown had previously indicated that the Locust Street property could not be connected to the Charlestown sewer for "various technical reasons." *Id.* The Health Department stated its preference for connection with sewer system, but explained that should such connection not be obtained, Ballew could install an additional on-site sewage disposal system. The Health Department required the remediation of the problem by November 4, 2006.

To complicate matters, a corporation in which Ballew had an interest, K.B.J., LLC, and the Sewer Department [1] had been involved in ongoing litigation. Specifically, K.B.J. had developed the Danbury Oaks subdivision. As part of its development of Danbury Oaks, K.B.J. and the Sewer Department entered into a contract in which K.B.J. agreed to provide sanitary sewer service from the Sewer Department's existing wastewater collection and treatment system to Danbury Oaks. In exchange, the Sewer Department agreed to reimburse K.B.J. certain user fees to cover a portion of K.B.J.'s construction costs. K.B.J. designed and constructed the sewer system for Danbury Oaks, a dispute arose between K.B.J. and the Sewer Department regarding the system, and a lawsuit was filed.[2] Although Ballew's house is not in

---

**1.** The Sewer Department acted through the City of Charlestown Board of Public Works. For simplicity, we refer to the Sewer Department, the Board of Public Works, and the City of Charlestown collectively as the Sewer Department.

**2.** The Sewer Department asks us to take judicial notice of the litigation between K.B.J. and the Sewer Department and included copies of various pleadings in its Appendix. However, for purposes of the appeal, the testimony from the hearing and the exhibits that were entered into evidence, including K.B.J.'s contract with

Danbury Oaks, the sewer he wants to tap into is part of the Danbury Oaks sewer system. According to the terms of the contract, the tap-in fee paid by Ballew to the Sewer Department would be transferred to K.B.J. as reimbursement for the construction of the Danbury Oaks system. *See* Tr. pp. 145–46.

On October 20, 2006, Ballew filed an emergency petition for mandate requesting that the Sewer Department be ordered to issue a permit to Ballew and allow him to tap into the Danbury Oaks sewer line. On November 17, 2006, after an evidentiary hearing, the Sewer Department filed an Indiana Trial Rule 12(B)(6) motion to dismiss alleging that Ballew did not have standing to petition for mandate. This motion was denied, and Ballew's petition for mandate was granted. The trial court issued findings of fact and conclusions of law requiring the Sewer Department to issue the permit to Ballew. The trial court's conclusions of law specifically provided in part:

8. In view of legal authorities in this state, the City is situated in a position of trust by virtue of the Agreement that is part of the evidence. The Agreement reflects the formation of a valid governmental contract containing several promises that would promote sewage utility services to homeowners. The Agreement, on its face, seeks to promote connections to sanitary sewer treatment facilities of the City.

9. The position of the Mayor of a City and the position of Defendant Perry are each an "office" provided [sic] by law to provide services to the public. Persons situated like Plaintiff are entitled to rely on agreements or statements of municipal officials or officers who provide utility services to members of the public.

10. The Defendants (whether through the officers of their Wastewater Treatment Plant, the Board of Public Works or through any other City office) have the responsibility to issue tap-in permits to persons who wish to utilize the City's sanitary sewer treatment system, particularly in view of the Agreement and the scope of investment the City's participation in the Agreement induced on the part of Plaintiff and his associates.

11. In addition to the above citations to the Clark County Sanitary Code, there are several instances shown in Indiana law and regulations which promote tapping-in to sanitary systems (in lieu of a privy system or septic system) when sanitary sewer lines are available near a structure.

12. At trial, the Court was requested to take judicial notice of 410 IAC 6–5.1–9, I.C. 8–1–2–125, 410 IAC 6–10–14, I.C. 13–26–5–2, I.C. 36–11–5–4, and I.C. 36–9–23–30 (applicable to cities) as persuasive authority to evidence the body of state-level legal authorities that promote systems.

13. The Court's decision to take such notice was only for the requested purpose and in conjunction with all other evidence.

14. I.C. 36–9–22–2 is a specific enactment of the Indiana General Assembly that provides authorization for municipal Contracts with Property Owners for Sewer Construction by Municipalities.

App. pp. 53–54. The Sewer Department now appeals.

### Analysis

■ Neither the Chronological Case Summary ("CCS") nor the transcript indicate that the parties requested findings

---

the Sewer Department, provide a sufficient basis for our review. We need not take judicial notice of the pleadings from the other litigation.

and conclusions pursuant to Indiana Trial Rule 52(A) prior to the hearing;[3] therefore, the trial court's entry of such was sua sponte. *See Piles v. Gosman*, 851 N.E.2d 1009, 1012 (Ind.Ct.App.2006). "Under such circumstances, the findings and judgment are not to be set aside unless clearly erroneous, and due regard is to be given to the trial court's ability to assess the credibility of the witnesses." *Id.* A judgment is clearly erroneous when there is no evidence supporting the findings or the findings fail to support the judgment or when the trial court applies the wrong legal standard to properly found facts. *Id.* Although findings of fact are reviewed under the clearly erroneous standard, we do not defer to conclusions of law, which are reviewed de novo. *Id.* "To determine that a finding or conclusion is clearly erroneous, we must be left with the firm conviction that a mistake has been made." *Id.*

■ A trial court's sua sponte findings control only the issues they cover. *Id.* We will apply a general judgment standard to any issues about which the court did not make findings. *Id.* We will affirm a general judgment based on any legal theory supported by the evidence. *Id.*

■ Indiana Code Section 34–27–3–1 governs actions for mandate and provides:

An action for mandate may be prosecuted against any inferior tribunal, corporation, public or corporate officer, or person to compel the performance of any:

(1) act that the law specifically requires; or

(2) duty resulting from any office, trust, or station.

"An action for mandate, an extraordinary remedy of an equitable nature, is generally viewed with disfavor." *State ex rel. Steinke v. Coriden*, 831 N.E.2d 751, 757 (Ind.Ct.App.2005), *trans. denied.* "Mandamus does not lie unless the petitioner has a clear and unquestioned right to relief and the respondent has failed to perform a clear, absolute, and imperative duty imposed by law." *Id.* (quotations and citations omitted). "[T]he mandamus action does not lie to establish a right or to define and impose a duty. Public officials, boards, and commissions may be mandated to perform ministerial acts when under a clear legal duty to perform such acts." *Perry Twp. v. Hedrick*, 429 N.E.2d 313, 316 (Ind.Ct.App.1981).

■ There is no doubt that a mandate action may be used to compel an official to act. *See Foltz v. City of Indianapolis*, 234 Ind. 656, 670, 130 N.E.2d 650, 656 (Ind. 1955) ("If the utility fails or refuses to serve on request, accordingly, it may be mandated to so serve."). The question here, however, is whether, there is a clear, absolute, and imperative duty requiring the Sewer Department to issue the permit to Ballew.

Ballew argues that because he requested a permit three times and each request was denied, he is entitled to the equitable relief provided by a mandate action. To the contrary, the denial of his requests alone does not warrant the granting of his petition for mandate. This is true even where, as here, a health emergency is involved. A mandate action was only proper if the Sewer Department had an unequivocal duty to act and did not so act. *See Hedrick*, 429 N.E.2d at 316.

---

**3.** The parties discussed submitting findings and conclusions at the end of the hearing, and the CCS indicates that on November 14, 2006, after the hearing, the Sewer Department requested findings and conclusions. Indiana Trial Rule 52(A), however, requires that a party file a written request prior to the admission of evidence.

Ballew points to no authority *requiring* that the Sewer Department issue a tap-in permit to anyone who requests one. Indeed, tapping into sewers is strongly encouraged and may even be required in certain circumstances. *See* Ind.Code § 8–1–2–125 (permitting a not-for-profit utility to require connection to a sewer system under certain circumstances); I.C. § 13–2–6–5–2 (addressing the powers of regional water, sewage, and solid waste districts); I.C. § 36–9–23–30 (permitting municipality operated sewage works to require connection to sewer system); Ind. Admin. Code tit. 410 r. 6–5.1–9 (pertaining to sanitary engineering at school buildings); 410 IAC 6–10–13 (governing denial of application for commercial on-site wastewater disposal facility construction permit). However, it does not follow that a sewer department must always grant an individual's request for a tap-in permit.

Even assuming, as the trial court did, that Ballew, in his personal capacity, has the right to benefit from the contract between K.B.J. and the Sewer Department, we cannot conclude that the Sewer Department failed to perform a clear, absolute, and imperative duty. There is no express provision of the contract that requires the Sewer Department to issue all permits that are requested. For example, Paragraph 14, which provides, "The City shall have the right to exercise all legal authority granted to it under Indiana law to require new dwellings and structures located near the Improvements to connect to the Improvements prior to, or after, occupancy." Exhibit 8. Even when broadly reading this clause, the Sewer Department only has the right to require new dwellings or structures to tap into the sewer. It is not obligated to allow existing houses to tap into the sewer.

Further, the trial court's conclusions do not show the existence of a clear, absolute,

and imperative duty to issue the permit. For example, Conclusion 10 provides:

> The Defendants (whether through the officers of their Wastewater Treatment Plant, the Board of Public Works or through any other City office) have the *responsibility* to issue tap-in permits to persons who wish to utilize the City's sanitary sewer treatment system, particularly in view of the Agreement and the scope of investment the City's participation in the Agreement induced on the part of Plaintiff and his associates.

App. p. 53 (emphasis added). Although the Sewer Department may be responsible for issuing permits, there is no indication that it must issue permits in all circumstances.

Further, Conclusion 11 provides:

> In addition to the above citations to the Clark County Sanitary Code, there are several instances shown in Indiana law and regulations which *promote* tapping-in to sanitary systems (in lieu of a privy system or septic system) when sanitary sewer lines are available near a structure.

*Id.* (emphasis added). As the Health Department letter to Ballew indicates, Section 6–1–1 of the Clark County Sanitary Code requires:

> Any persons or owner or person in possession of any properly located within Clark County, Indiana and which property is, or is proposed to be, served by an on site sewage disposal system or privy, shall cause a direct connection to be made to any public sanitary sewage system when such a publish system is available within 150 feet of the property line. . . .

Exhibit 3. However, the Administrator of the Health Department testified at the hearing that this provision has no authority "or sway" over the Sewer Department and that the Health Department has no

authority to order the Sewer Department to do anything. Tr. p. 41.

Because there is no authority clearly requiring the Sewer Department to issue a tap-in permit to Ballew, the trial court's conclusion is clearly erroneous. A petition for mandate is not the proper avenue for relief. Although the Sewer Department may be in breach of its contract with K.B.J. or Ballew may eventually be able to establish that the permit was wrongfully denied through judicial review proceedings, the trial court improperly granted Ballew's petition for mandate.[4]

### Conclusion

In the absence of a clear legal duty to issue a tap-in permit to Ballew, the trial court improperly granted Ballew's petition for mandate. We reverse.

Reversed.

KIRSCH, J., and ROBB, J., concur.

4. Because of the manner in which we resolve this case, we need not address the Sewer Department's standing or constitutional arguments.