STATE ex rel. CHAUFFEURS, TEAM-
STERS and HELPERS, LOCAL UN-
ION NO. 414, Appellant–Plaintiff,

v.

Wendy ROBINSON, in her official ca-
pacity as Superintendent of Fort
Wayne Community Schools, Appellee–
Defendant.

No. 02A03–0812–CV–618.

Court of Appeals of Indiana.

May 20, 2009.

Rehearing Denied July 22, 2009.

Fred O. Towe, Geoffrey S. Lohman, Fil-
lenwarth Dennerline Groth & Towe, LLP,
Indianapolis, IN, Attorneys for Appellant.

Matthew J. Elliott, Beckman Lawson,
LLP, Fort Wayne, IN, Attorney for Ap-
pellee.

## OPINION

RILEY, Judge.

### STATEMENT OF THE CASE

Appellant–Plaintiff, State ex rel. Chauf-
feurs, Teamsters and Helpers Local Union
No. 414 (the Union or the Teamsters),
appeals the trial court's grant of summary
judgment in favor of Appellee–Defendant,
Wendy Robinson (Dr. Robinson), in her
official capacity as Superintendent of Fort
Wayne Community Schools (FWCS), in
the Union's action for mandate arising
from collective bargaining negotiations be-
tween FWCS and FWCS bus drivers.

We affirm.

### ISSUE

The Union presents three issues for our
review, which we restate as the following
single issue: Whether the trial court erred
by refusing to order Dr. Robinson to pres-
ent a tentative collective bargaining agree-
ment to the FWCS Board of School Trus-
tees (School Board) for its consideration.

*FACTS AND PROCEDURAL HISTORY*

The Union is the exclusive bargaining representative for approximately 220 FWCS bus drivers. The Union and FWCS had a collective bargaining agreement that ran from February 27, 2003, through December 31, 2005. In September of 2005, the Union and FWCS began negotiating a new agreement. On May 17, 2007, the parties reached a tentative oral agreement. The next day, Dr. Robinson informed the School Board that the previous day's meeting was "likely to lead to a settlement." (Appellant's App. p. 99). On May 25, 2007, in another report to the School Board, Dr. Robinson wrote, in part:

All issues have been resolved verbally with [the Union's negotiating] team. The next step will be to finalize the new contract in writing, and move it forward for ratification by the membership. Before that happens, Teamsters will need to review the Teamster's Central States Health Insurance with drivers. This is a sore point with many members, who fear switching insurance carriers. It may hold up ratification.

\* \* \* \*

I will provide more details after the Teamsters have discussed the settlement with their members. This is the best settlement we could reach at this time without doing harm to the district or drivers.

(Appellant's App. p. 100). In a vote on June 3, 2007, the drivers voted to ratify the agreement.

On June 4, 2007, in a letter to the FWCS drivers, Dr. Robinson wrote:

We understand that a ratification vote was held by the Teamsters Union on June 3, 2007.

Several important steps have been omitted. First, before any tentative agreement with the Teamsters goes to our School Board, all the agreed terms will be spelled out in writing and agreed to. Second, information on the insurance plan needs to be discussed with the drivers. That has *not* happened yet. Only after these issues are resolved will there be contract ratification.

(Appellant's App. p. 101) (emphasis in original). Likewise, in a report to the School Board on June 7, 2007, Dr. Robinson wrote:

Earlier this week, I sent an email to you providing an update on the Teamsters and bus driver insurance issue. We continue working to implement a jointly approved contract with the Teamsters. Our next step is to meet with them and confirm all of the tentative agreement that we have accumulated from this contract over the course of the past 2 years. Once the contract is confirmed and agreed upon in full, we will bring it to the [School] Board for approval.

(Appellant's App. p. 102).

To that end, negotiators from FWCS and the Union met on June 28, 2007, to work on a final written agreement. A dispute arose regarding one of the provisions, and the agreement was not finalized. In the following days, however, the Union informed FWCS of its "acquiescence to the FWCS position" on the provision in dispute. (Appellant's Br. p. 6). Nonetheless, on August 17, 2007, Dr. Robinson reported to the School Board that certain provisions of the tentative agreement "are not sound business decisions for us to make." (Appellant's App. p. 108). The tentative agreement was never reduced to writing, and Dr. Robinson never submitted it to the School Board for a vote.

On November 7, 2007, the Union filed an action for mandate asking the trial court to order Dr. Robinson "to submit for a vote

to the Fort Wayne Community School Board the agreement reached between the FWCS negotiating committee and the Union for a collective bargaining agreement." (Appellant's App. p. 15).[1] On June 6, 2008, Dr. Robinson filed a motion for summary judgment. On August 27, 2008, the trial court held a hearing on the motion.

During the hearing, the trial court pressed the Union's attorney as to whether there was a written agreement. He responded:

> There's a writing of the agreement, okay? There's the pre-existing agreement that's been marked up with the changes that the parties have had agreed upon during the course of this discussion. There is no agreement that is in what I would call the final form which actually puts into the text of the agreement and fits in what the various understandings and changes were to the agreement during negotiations. There is a writing out there but it's just not in the final form at this moment in time.

(Transcript p. 38). When questioned by the court about the prospect of presenting to the School Board an agreement that had not been reduced to writing, the Union's attorney acknowledged that any agreement would first have to be put into writing. He stated, "I think that part of the finalization of all of this is that agreement has to be placed in its final form as agreed upon by the parties," adding, "[I]t's a ministerial act to actually put that in final form[.]" (Tr. pp. 39–40).

On November 25, 2008, the trial court issued its Findings, Order and Judgment granting summary judgment in favor of Dr. Robinson, thereby denying the Union's request for an order of mandate. In its order, the trial court stated, in part:

At oral argument, the Teamsters acknowledged that the school board cannot vote on the oral agreement, and suggested that the Court could order the parties to reduce the oral agreement to writing and then present it to the school board. This remedy is not feasible, because there may be disagreements on the contractual language. Without a final written agreement, the school board cannot approve the contract, and therefore the Teamsters' [sic] lack any cognizable claim for mandate.

(Appellant's App. p. 11).

The Union now appeals. Additional facts will be provided as necessary.

### DISCUSSION AND DECISION

■ The Union contends that the trial court erred in granting summary judgment in favor of Dr. Robinson. In reviewing summary judgment rulings, we apply the same standard as the trial court. *Kopczynski v. Barger*, 887 N.E.2d 928, 930 (Ind.2008). We affirm summary judgment unless there is a genuine issue as to a material fact or the moving party is not entitled to a judgment as a matter of law. *Id.* All facts and reasonable inferences from them are to be construed in favor of the nonmoving party. *Id.*

■■ Indiana Code section 34–27–3–1 governs actions for mandate and provides:

> An action for mandate may be prosecuted against any inferior tribunal, corporation, public or corporate officer, or person to compel the performance of any:
>
> (1) act that the law specifically requires; or
>
> (2) duty resulting from any office, trust, or station.

1. Pursuant to Indiana Code section 34–27–1–1, the Union properly filed its complaint in the name of the State on relation of the Union.

Mandate is an extraordinary equitable remedy that is viewed with disfavor. *Perry v. Ballew*, 873 N.E.2d 1068, 1072 (Ind. Ct.App.2007), *reh'g denied.* Mandamus does not lie unless the petitioner has a clear and unquestioned right to relief and the respondent has failed' to perform a clear, absolute, and imperative duty imposed by law. *Id.*

On appeal, the Union, citing various statutes and School Board policies, focuses on Dr. Robinson's alleged duty to submit certain matters to the School Board, while seeking to trivialize the lack of a written agreement in this case. The Union argues:

> Finally, the trial court found that because there was no final writing to be submitted to the Board, that there might be disagreements regarding the language, and as such, there can be no claim for mandate. But again, this finding ignores the designated evidence establishing that the language had all been agreed to by the parties as of the end of June or the first of July of 2007. *The only thing remaining to be done was the purely ministerial act of gathering all of that language into a single document for presentation to the Board. This is no real impediment to order Dr. Robinson to submit the contract to the Board for a vote.*

(Appellant's Br. p. 22) (citation omitted, emphasis added). History shows that the Union is oversimplifying this issue.

FWCS and Union negotiators thought that they had agreed on all issues when they met on June 28, 2007, to put things in writing, but no final agreement came out of that meeting. As the Union's counsel conceded during the summary judgment hearing, "There is a writing out there but it's just not in the final form at this moment in time." (Tr. p. 38). Even if we were to reverse the trial court's ruling and remand this cause for an order mandating Dr. Robinson to submit this matter to the School Board for a vote, it is hard to imagine exactly what it is that Dr. Robinson would submit. The negotiators could attempt to reduce their tentative agreement to writing, but the trial court correctly observed that additional disagreements could arise during the drafting process. Therefore, as the trial court concluded, an order of mandate is not feasible at this time. In short, even if the Union is correct that Dr. Robinson has a duty to submit certain agreements to the School Board, there is no agreement to be submitted in this case. Given the long and contentious negotiations between the parties, formalizing an agreement would be anything but a "purely ministerial act." As such, we affirm the trial court's grant of summary judgment denying the Union's action for mandate.

### CONCLUSION

Based on the foregoing, we conclude that the trial court properly granted summary judgment in favor of Dr. Robinson.

Affirmed.

KIRSCH, J., and MATHIAS, J., concur.