

FILED

Oct 25 2016, 5:54 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

<table>
<tr><td>

ATTORNEYS FOR APPELLANT

Kenneth J. Falk
Gavin M. Rose
ACLU of Indiana
Indianapolis, Indiana

</td><td>

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Frances Barrow
Andrea E. Rahman
Deputy Attorneys General
Indianapolis, Indiana

</td></tr>
</table>

# IN THE
# COURT OF APPEALS OF INDIANA

<table>
<tr><td>

Mary Price, on her own behalf
and on behalf of a class of those
similarly situated,

*Appellants-Plaintiffs,*

v.

Indiana Department of Child
Services; Director, Indiana
Department of Child Services,

*Appellees-Defendants.*

</td><td>

October 25, 2016

Court of Appeals Case No.
49A05-1602-PL-380

Appeal from the Marion Superior
Court

The Honorable Heather Welch,
Judge

Trial Court Cause No.
49D01-1507-PL-23062

</td></tr>
</table>

**Riley, Judge.**

## STATEMENT OF THE CASE

Appellant-Plaintiff, Mary Price (Price), on her own behalf and on behalf of a class of those similarly situated, appeals the trial court's grant of Appellees-Defendants', Indiana Department of Child Services; Director, Indiana Department of Child Services (collectively, DCS), motion for dismissal of Price's Complaint for failing to state a claim for relief pursuant to Indiana Trial Rule 12(b)(6).[1]

We affirm, in part, reverse, in part, and remand.

## ISSUES

Price raises two issues on appeal, which we restate as:

(1) Whether Price has a private right of action to enforce the maximum caseload standard included in Indiana Code section 31-25-2-5; and

(2) Whether Price's Complaint states a claim for relief as an action for mandate.

## FACTS AND PROCEDURAL HISTORY

Under Indiana law, the DCS is charged with the responsibility of providing various services to protect children and to strengthen families. The family case managers (FCMs), employed by the DCS, are "the backbone of Indiana's child

---

[1] We heard oral argument in this cause on July 20, 2016, at the Indiana Supreme Court Courtroom in Indianapolis, Indiana. We commend counsel for their excellent advocacy and well-written appellate briefs.

welfare system" and the key components in safeguarding the safety of Indiana's children. (Appellant's App. p. 4). They are responsible for, among other things, investigating reports of abuse or neglect of children in Indiana, ongoing case management services if the reports indicate that abuse or neglect actually occurred, providing family support services to strengthen families to help assure that abuse or neglect will not recur, and offering adoption or other permanency services if children cannot safely be returned to their homes. Some FCMs may only provide initial assessments, while others are permanency workers who monitor and supervise active cases after abuse or neglect is substantiated. In smaller counties, one FCM may often perform both functions.

Indiana Code section 31-25-2-5 provides, in part, referring to DCS as "the department," that:

> (a) The department shall ensure that the department maintains staffing levels of family case managers so that each region has enough family case managers to allow caseloads to be at not more than:
>
> > (1) Twelve (12) active cases relating to initial assessments, including investigations of an allegation of child abuse or neglect; or
>
> > (2) Seventeen (17) children monitored and supervised in active cases relating to ongoing services.
>
> (b) The department shall comply with the maximum caseload ratios described in subsection (a).

This statutory requirement is further emphasized by Indiana Code section 31-25-2-10, which clarifies:

> (a) This section applies after June 30, 2008.
>
> (b) The department of child services:
>
> > (1) must have sufficient qualified and trained staff to:
> >
> > > (A) fulfill the purpose of this article;
> > >
> > > (B) comply with the maximum caseload ratios for:
> > >
> > > > (i)    Family case managers; and
> > > >
> > > > (ii)   Child welfare caseworkers;
> > > >
> > > > as set forth in [I.C. § ] 31-25-2-5.

[6]    Price is currently employed by DCS in Marion County as a permanency worker. Therefore, pursuant to the statute, her caseload should be limited to no more than 17 children. However, in the past four years, Price's caseload has "always greatly exceed[ed] this number" and at the time of filing the Complaint amounted to "approximately 43 children." (Appellant's App. p. 25). In its 2014 Annual Report to the State Budget Committee and Legislative Council, the DCS reported that it would need to employ an additional 216.2 FCMs to comply with the caseload standards mandated by Indiana law. Although additional money was appropriated to hire more FCMs during the 2015

legislative session, insufficient money was made available to allow the mandated statutory caseload standards to be achieved.

[7] Because of the increasing caseload, Price and other FCMs work much longer than a 40-hour week in an effort to keep up with their cases. Due to the excessive caseload, turnover among the FCMs has become a serious problem as they "frequently leave to find employment that is less stressful and demanding." (Appellant's App. p. 26).

[8] On July 14, 2015, Price filed her Verified Class Action Complaint for Mandate and Injunctive and Declaratory Relief, contending that DCS violated Indiana Code section 31-25-2-5 by failing to ensure that the department meets the FCM standards mandated by statute. Price requested the court to enter an order mandating or enjoining DCS to take all steps necessary to comply with Indiana Code section 31-25-2-5. On July 16, 2015, she filed her motion asking to certify the case as a class action, with the class defined as all FCMs employed by the DCS.

[9] On September 9, 2015, DCS filed its motion to dismiss for failure to state a claim for relief pursuant to Indiana Trial Rule 12(b)(6) and supporting memorandum, arguing for the dismissal of the cause because Price and the putative class cannot enforce the explicit caseload standards contained in the statute. Price responded on September 30, 2015, claiming that a cause of action to enforce the statute existed but that, in any event, she also had a claim for mandate. In its reply of October 13, 2015, DCS rejected the mandate.

On January 6, 2016, the trial court conducted a hearing on DCS's motion for dismissal. During the hearing, DCS contended, for the first time, that mandate is not appropriate because Price had an adequate remedy at law in Indiana's Civil Service Complaint procedure. On February 22, 2016, the trial court granted DCS's motion and dismissed Price's complaint. The trial court concluded that no private right of action existed under Indiana Code section 31-25-2-5 because the protections included in the statute are for the benefit of the general public. "Any benefit gained by [FCMs] through compliance with I.C. § 31-25-2-5 is ancillary or secondary to that purpose." (Appellant's App. p. 17). Secondly, the trial court held that Price and the putative class of FCMs could not bring an action for mandate because they had an adequate remedy at law through the Civil Service Complaint procedure.

Price now appeals. Additional facts will be provided as necessary.

## DISCUSSION AND DECISION

### I. *Standard of Review*

The standard of review on appeal of a trial court's grant of a motion to dismiss for the failure to state a claim is *de novo* and requires no deference to the trial court's decision. *Bellows v. Bd. of Comm'rs of County of Elkhart*, 926 N.E.2d 96, 110 (Ind. Ct. App. 2010). The grant or denial of a motion to dismiss turns only on the legal sufficiency of the claim and does not require determinations of fact. *Id*. "'A motion to dismiss under Rule 12(B)(6) tests the legal sufficiency of a complaint: that is, whether the allegations in the complaint establish any set of

circumstances under which a plaintiff would be entitled to relief.'" *Id.* (quoting *Lei Shi v. Cecilia Yi*, 921 N.E.2d 31, 36 (Ind. Ct. App. 2010)). Thus, while we do not test the sufficiency of the facts alleged with regard to their adequacy to provide recovery, we do test their sufficiency with regards to whether or not they have stated some factual scenario in which a legally actionable injury has occurred. *Id.*

## II. *Private Cause of Action*

[13] Price first contends that the trial court abused its discretion when it concluded that Indiana Code section 31-25-2-5 only conferred a public benefit, and did not grant her a private cause of action. Although Price does not dispute the public benefits derived from the statute, she argues that the statute also awarded a private cause of action because

> [i]f [Price] and the other FCMs have caseloads that are manageable they will be able to perform their duties. They will not have to work overtime to try to keep up with their work. They will not suffer "burnout" and quit. These are all direct, private [] benefits to the FCMs. The fact that the FCMs will have better working conditions if DCS complies with the statute will inure directly to the public, but it will also bestow a clear and identifiable private benefit on the FCMs.

(Appellant's Br. p. 22).

[14] When a civil cause of action is premised upon a violation of a duty imposed by statute, the initial question to be determined by the court is whether the statute confers a private right of action. *Lockett v. Planned Parenthood of Ind., Inc.*, 42

N.E.3d 119, 127 (Ind. Ct. App. 2015), *trans. denied*. To find the existence of a civil cause of action, we first examine legislative intent. *Id*. We ascertain whether the statute is designed to protect the general public and whether the statutory scheme contains an enforcement mechanism or remedies for violation of the duty. *Id*. A private party generally may not enforce rights under a statute designed to protect the public in general and containing a comprehensive enforcement mechanism. *Id*. Whether a statute creates a private right of action is a question of law for the court. *Id*.

[15] Contending that I.C. § 31-25-2-5 combines a public right of action with a private benefit, Price relies on *Whinery v. Roberson*, 819 N.E.2d 465 (Ind. Ct. App. 2004), *trans. dismissed*, and *Galloway v. Hadley*, 881 N.E.2d 667 (Ind. Ct. App. 2008). In both cases, this court noted that "statutes that confer public and private benefits . . . establish a private cause of action. Indeed, it makes little sense to preclude recovery for violations of specific rights merely because the public receives an ancillary benefit from the statute conferring the rights." *Whinery*, 819 N.E.2d at 475; *Galloway*, 881 N.E.2d at 672. Applied to I.C. § 31-25-2-5, Price asserts that "the general benefit to the public flows directly from the private benefit that the statute provides to the FCMs." (Appellant's Br. p. 22). We disagree.

[16] "[W]hen the legislative purpose is general in nature, the mere fact that statutory language refers to a class of people does not create a private cause of action." *Americanos v. State*, 728 N.E.2d 895, 898 (Ind. Ct. App. 2000), *trans. denied*. Examining the legislative intent, we conclude that the imposition of caseload

requirements was intended to protect the public in general through the consistent, efficient, and effective administration of DCS's services. Although it is undeniable that Price and the other FCM's will benefit from a manageable caseload, our legislature's main consideration in enacting the statute was to protect the children and families in our society. In order to promote this public duty of protection, the legislature sought to ensure an agreeable work environment for FCMs. Therefore, as no duty for a particular individual's benefit was imposed, no private cause of action flows from I.C. § 31-25-2-5.

### III. *Mandate*

In an attempt to bring the DCS into compliance with its statutory duty encapsulated in I.C.§ 31-25-2-5, Price also claims the right to bring a mandate action to compel the DCS to comply with the duty it is shirking, *i.e.*, to maintain the prescribed staffing levels.

Indiana Code section 34-27-3-1 provides:

> An action for mandate may be prosecuted against any inferior tribunal, corporation, public or corporate officer, or person to compel the performance of any:
>
> (1) act that the law specifically requires; or
>
> (2) duty resulting from any office, trust, or station.

"An action for mandate, an extraordinary remedy of an equitable nature, is generally viewed with disfavor." *Hayes v. Trustees of Ind. Univ.*, 902 N.E.2d 303,

315 (Ind. Ct. App. 2009) (quoting *Perry v. Ballew*, 873 N.E.2d 1068, 1072 (Ind. Ct. App. 2007), *trans. denied*. Mandamus cannot be invoked unless the petitioner has a clear and unquestioned right to relief and the respondent has failed to perform a clear, absolute, and imperative duty imposed by law. *Id.* "[T]he mandamus action does not lie to establish a right or to define and impose a duty." *Id.* Public officials, boards, and commissions may be mandated to perform ministerial acts when under a clear legal duty to perform such acts. *Id.* Stated another way, a mandate order will not be granted to control the discretionary action of a public officer, board, or commission. *Harmony Health Plan of Ind., Inc., v. Ind. Dep't of Admin.*, 864 N.E.2d 1083, 1089 (Ind. Ct. App. 2007). "[A]n honest exercise of that discretion will not be disturbed by the courts." *Id.*

## A. *Standing*

[19] It should be mentioned that an action for mandate does not confer automatic standing upon a plaintiff. We have previously determined that a plaintiff seeking mandate must show actual injury by the challenged governmental action. *State ex rel. Berkshire v. City of Logansport*, 928 N.E.2d 587, 597 (Ind. Ct. App. 2010), *trans denied*.

[20] Even though no private cause of action exists to enforce I.C. § 31-25-2-5, in *Cittadine v. Ind. Dep't of Transp.* 790 N.E.2d 978, 980 (Ind. 2003), our supreme court reaffirmed the continued vitality of Indiana's public standing doctrine:

The public standing doctrine, which applies in cases where public rather than private rights are at issue and in cases which involve the enforcement of a public rather than a private right, continues to be a viable exception to the general standing requirement. The public standing doctrine permits the asserting of all proper legal challenges, including claims that government action is unconstitutional.

Although the supreme court did not define "public right" in this context, it cited several examples where a public right was found to exist. *See, e.g., Miller v. City of Evansville*, 189 N.E.2d 823 (Ind. 1963) (resident-taxpayer has a public right where city's waterworks department was allegedly not authorized to contract for construction of equipment for fluoridation of public drinking water); *Davis Const. Co. v. Bd. of Comm'rs of Boone Co.*, 132 N.E. 629 (Ind. 1921) (taxpayer had public right where allegedly unconstitutional statute sought to impose property tax in district in which he lived and owned property subject to assessment); *Brooks v. State, ex rel. Singer*, 70 N.E 980 (Ind. 1904) (citizen-voter of Ripley County had a public interest in the constitutional apportionment of senators and representatives throughout the state); *Hamilton v. State ex rel. Bates*, 3 Ind. 452 (1852) (citizen-taxpayer of Marion County has a public interest in the county auditor correctly discharging the duties of his office).

Just like the public interest found to exist and confer standing in *Cittadine* and other case law referenced, rights created under I.C. § 31-25-2-5 are public and confer public standing on Price. The purpose of the statutorily defined maximum caseload ratios is to provide protections to the general public through consistent, efficient, and effective administration of child and family services.

Accordingly—and the State does not contest—Price, as member of the general public, can avail herself of the statute through the public standing doctrine.

B. *Exhaustion of Remedies*

[22] Because the issuance of a mandate is an extraordinary remedy, where an adequate remedy at law is available, mandate should not be imposed to compel performance of an act. *Whitney v. Bd. of Sch. Trustees of DeKalb Co. Eastern Cmty. Sch. Dist.*, 416 N.E.2d 1289, 1292 (Ind. 1981). As such, "[t]he mandate itself is meant to accomplish what cannot otherwise be accomplished through ordinary legal or equitable remedies." *Ind. Revenue Bd. v. State ex rel Bd of Comm'rs of Co. of Hendricks*, 385 N.E.2d 1131, 1134 (Ind. 1979).

[23] Within the arena of administrative agencies, like here, "[t]here exists a strong bias in the case law in favor of the requirement that administrative remedies be exhausted." *Smith v. State Lottery Comm'n of Ind.*, 701 N.E.2d 926, 931 (Ind. Ct. App. 1998), *trans. denied*. The objective of such a requirement is to avoid collateral, dilatory action, ensure the efficient, uninterrupted progression of administrative proceedings and the effective application of judicial review, and provide an agency with an opportunity to correct its own errors and to compile a factual record as necessary for judicial review. *Id.*

[24] Nevertheless, exceptions to the requirement of exhaustion of remedies at the agency level exist. A party is excepted from the exhaustion requirement when the remedy is inadequate or would be futile, or when some equitable consideration precludes application of the rule. *Ind. State Building & Constr.*

*Trades Council v. Warsaw Cmty. Sch. Corp.*, 493 N.E.2d 800, 806 (Ind. Ct. App. 1986). To prevail upon a claim of futility, "one must show that the administrative agency was powerless to effect a remedy or that it would have been impossible or fruitless and of no value under the circumstances." *Id.* Also, the requirement of exhaustion of administrative remedies "will be relaxed where there is grave doubt as to the availability of the administrative remedy." *Ind. High Sch. Athletic Ass'n v. Raike*, 329 N.E.2d 66, 82 (Ind. 1975).

[25] Focusing on the exhaustion requirement, the trial court noted:

> In this case, the [c]ourt finds that an adequate remedy at law exists to enforce caseload requirements under Article 25 for Caseworkers under Indiana's Civil Service Complaint procedure established under I.C. § 4-15-2.2-42. I.C. § 4-15-2.2-42 allows state employees, such as Price, to file a complaint concerning a Department's application of a **law**, rule, or policy and establishes a procedure for resolution, including a mechanism for reconsideration of the initial findings by the Director of State Personnel and an appeal of the decision to the State Employee Appeals Commission ("SEAC"). The decisions of SEAC concerning the resolution of the complaint are subject to legal review in accordance with I.C. [Ch] 4-21.5-3. The Legislature established this complaint procedure to provide state employees a fair process to resolve complaints concerning the "application of a law, rule, or policy to the complainant."

(Appellant's App. p. 19) (emphasis in original) (internal citations omitted). Because the trial court concluded that Price had not exhausted the administrative remedy of the Indiana's Civil Service Complaint procedure, the trial court dismissed Price's complaint.

[26] The Indiana Civil Service Complaint procedure, as defined in I.C. § 4-15-2.2-42(a), provides that "[a]n employee in the state civil service system may file a complaint concerning the application of a law, rule, or policy to the complainant." This complaint must be filed "as soon as possible after the occurrence of the act or condition complained of, and not later than thirty (30) calendar days after the employee became aware or by the exercise of reasonable diligence should have been aware, of the occurrence giving rise to the complaint." I.C. § 4-15-2.2-42(c). The complaint must be filed with the "appointing authority," which is defined as "the head of a department, division, board or commission, or an individual or group of individuals who have the power by law or by lawfully delegated authority to make appointments to positions in the state civil service." I.C. § 4-15-2.2-2. An appeal may be taken to the State personnel director, and a final administrative appeal is available to the State Employees Appeals Commission. I.C. § 4-15-2.2-2(e). After exhaustion of these administrative remedies, a judicial review may be requested. I.C. § 4-15-2.2-2(h).

[27] Accordingly, the administrative procedure is geared towards the resolution of "acts or conditions" which include the "application of a law, rule, or policy" with respect to the complainant. *See* I.C. § 4-15-2.2-42(a)&(c). As we noted in *Abner v. Dep't of Health of State of Ind. ex rel. Ind. Soldiers' & Sailors' Children's Home*, 777 N.E.2d 778, 782 (Ind. Ct. App. 2002), *trans. denied*, these terms must be given a "liberal construction." While the caseload ratio is arguably a condition which entails the application of a statute, we agree with Price that the

matter before us concerns a systemic deficiency which is not unique to her but is experienced by hundreds of case workers in Indiana.

[28]     A review of the case law of the State Employees Appeals Commission reveals that its usual issues pertain to individual employment related acts, such as employee termination (*see, e.g., Westville Correctional Facility v. Finney*, 953 N.E.2d 1116 (Ind. Ct. App. 2011)); equal pay (*see, e.g., Indiana State Employees Appeal Comm'n v. Bishop*, 721 N.E.2d 881 (Ind. Ct. App. 1999); *Ind. State Employees' Appeals Com'n v. Greene*, 716 N.E.2d 54 (Ind. Ct. App. 1999)); reinstatement of employees (*see e.g., Evansville State Hosp. v. Perry*, 549 N.E.2d 44 (Ind. Ct. App. 1989); and retirement annuity (*see, e.g., State v. Young*, 855 N.E.2d 329 (Ind. Ct. App. 2006)). In *Ahles v. Orr*, 456 N.E.2d 425, 426 (Ind. Ct. App. 1983), we noted that the "subjects addressed by the administrative procedures prescribed in" I.C. § 4-15-2.2-42[2] are "complaints relating to involuntary changes in employment or claimed unsatisfactory working conditions[.]" The systemic challenge brought by Price falls outside the boundaries of this administrative appeals procedure and must be addressed by the judicial system. It is undeniable that the administrative tribunals cannot order the Governor to take action or order the legislature to comply with its own statute. "[C]ourts have recognized the futility of exhaustion where a plaintiff do[es] not challenge an individual . . . decision by the [agency] where agency expertise would be

_____

[2] *Ahles* refers to I.C. § 4-15-2-35, which has been repealed. The current version of the statute is I.C. § 4-15-2.2-42.

important but instead challenges the agency's policy, pattern, and practice or systemic failure to comply with federal law." *Lazaridis v. Social Sec. Admin*, 856 F.Supp.2d 93, 98 (D.D.C. Apr. 19, 2012). Therefore, "[i]f the administrative procedure is incapable of offering a remedy for a party's complaint and is incapable of addressing the issues presented by a party's claim, exhaustion is not required. . . . 'When the character of the question presented is beyond the pale of the agency's competency, expertise, and authority, failure to exhaust will be excused.'" *Rene ex. rel. Rene v. Reed*, 726 N.E.2d 808, 819 (Ind. Ct. App. 2000) (quoting *Rambo v. Cohen*, 587 N.E.2d 140, 144 (Ind. Ct. App. 1992), *trans. denied*). Accordingly, we cannot conclude that Price's complaint falls within the purview of the "acts or conditions" that Indiana's Civil Service Complaint procedure addresses. Therefore, no adequate remedy is available.

## C. *Clear Duty Imposed by Law*

[29] However, even though the DCS failed to formulate an explicit response to Price's systemic deficiencies' argument, DCS argues that mandate is inappropriate because any order by the court would entail a violation of the separation of powers doctrine and dictate the performance of discretionary agency acts. Specifically, DCS argues that in order to employ more staff to satisfy the statutory caseload standard established in I.C.§ 31-25-2-5, the legislature and Governor will have to be ordered to free up funding and to engage in specific discretionary acts. We disagree.

[30] The statutory caseload maximums included in I.C. § 31-25-2-5(a) & (b) are not an aspirational goal but are a clear and definite number to attain. The statute declares, in pertinent part:

> (a) The department **shall ensure** that the department maintains staffing levels of family case managers so that each region has enough family case managers to allow caseloads to be at not more than:
>
> > (3) Twelve (12) active cases relating to initial assessments, including investigations of an allegation of child abuse or neglect; or
> >
> > (4) Seventeen (17) children monitored and supervised in active cases relating to ongoing services.
>
> (b) The department **shall comply** with the maximum caseload ratios described in subsection (a).

I.C. § 31-25-2-5 (emphasis added). By phrasing the statute in mandatory language, it could not be more specific or absolute. "When the word 'shall' appears in a statute, it is construed as mandatory rather than directory unless it appears from the context or the purpose of the statute that the legislature intended a different meaning." *City of Wabash v. Wabash Co. Sheriff's Dep't*, 562 N.E.2d 1299, 1301 (Ind. Ct. App. 1990). And, "absent any legislative direction to the contrary, 'must' means 'must.'" *In re Resnover*, 979 N.E.2d 668, 677 (Ind. Ct. App. 2012).

[31]  In her Complaint, Price merely requests that the DCS be mandated to comply with its legal duties, *i.e.,* the caseload maximums. How DCS accomplishes this is up to the agency.[3] "Courts may and sometimes do exercise authority to compel public officials to act in matters where discretion is involved, but they do not undertake to control the discretion." *Ind. State Highway Comm'n v. Zehner*, 366 N.E.2d 697, 701 (Ind. Ct. App. 1977) (*see, e.g., Ind. Alcoholic Beverage Comm'n v. State ex rel. Harmon*, 379 N.E.2d 140, 146 (Ind. 1978) (although the Alcoholic Beverage Commission has discretion as to whether or not to issue a liquor license, it can be compelled to take action on an application)). Thus, contrary to the DCS' argument, Price is not requesting an order that invades the province of the other branches of government but rather wants the DCS to merely comply with the statute. As such, the mandate action is directed at the clear statutory duty, not at the DCS's discretion.

[32]  Accordingly, as Indiana Code section 31-25-2-5 imposes a clear, absolute, and imperative duty on DCS to comply with maximum caseload standards as determined by the legislature and no administrative remedy is available to

---

[3] DCS argues that it will be impossible to enforce compliance with the statute as

> [i]t would be impractical for the trial court to establish a deadline because DCS's compliance with the statute relies on a key external factor that is out of DCS's control – the number of people able and willing to work as an FCM. Moreover, other external factors come into play, such as DCS's need to obtain sufficient funding to hire the necessary people and the number of active cases remaining steady or declining.

(Appellee's Br. p. 43). However, these arguments are directed at a possible future defense DCS might have against claims that it did not comply with a mandate order. An appeal from a grant of a motion to dismiss is not the place to consider such possible defenses. The uncertain possibility of such a future eventuality does not militate against the fact that DCS is under a specific duty today to abide by definite caseload standards.

address this systemic violation of Indiana law, we conclude that Price can proceed with a mandate action. We therefore reverse the trial court's order to dismiss with respect to the mandate and remand for further proceedings.

## CONCLUSION

[33] Based on the foregoing, we conclude that even though Price has no private case of action under I.C. § 31-25-2-5, Price's Complaint states a claim for relief as an action for mandate.

[34] Affirmed in part, reversed in part, and remanded.

[35] Robb, J. concurs in part and concurs in result in part with separate opinion.

[36] Kirsch, J. concurs in part and dissents in part with separate opinion.

| | |
|---|---|
| Mary Price, on her own behalf and on behalf of a class of those similarly situated, | Court of Appeals Case No. 49A05-1602-PL-380 |
| *Appellants-Plaintiffs,* | |
| v. | |
| Indiana Department of Child Services; Director, Indiana Department of Child Services, | |
| *Appellees-Defendants.* | |

**Robb, Judge, concurring in part and concurring in result in part.**

[37]    I concur fully in Part II of the majority opinion affirming the trial court's decision that Price does not have a private right of action to enforce the statutory maximum caseload standard. As to Part III, I respectfully concur in result.

[38]    As Judge Riley notes, mandate is available only where no adequate remedy at law is available. *See* slip op. at ¶ 22 (citing *Whitney v. Bd. of Sch. Trustees of DeKalb Co. Eastern Cmty. Sch. Dist.*, 416 N.E.2d 1289, 1292 (Ind. 1981)). The dissent believes Price has an adequate remedy under the Indiana Civil Service Complaint procedure and mandate is therefore inappropriate. *See* slip op. at ¶ -.

I believe we cannot find that an adequate remedy is available through the Civil Service Complaint procedure, *see* slip op. at ¶ 28. I write separately to elaborate upon that conclusion.

[39] The Indiana Civil Service Complaint procedure may be *a* remedy, but we are not in a position to say it is an *adequate* remedy, given DCS's concession at oral argument that its caseworkers' caseload numbers continue to climb and the money appropriated by the legislature has thus far not been enough to allow DCS to hire enough caseworkers to meet the statutory caseload limitation. Any remedy Price could obtain through the civil service complaint procedure would be to her benefit only, and therefore would be inadequate at best, if not completely illusory, in addressing the fullness of the problem. Although DCS professes to *want* to comply and to *intend* to comply with the statute "to the extent possible," https://mycourts.in.gov/arguments/default.aspx?id=1981&view=detail (beginning at 22:58), the fact is DCS is *unable* to comply with the letter of the statute, even if through no fault of its own. There is nothing to be gained by forcing Price to go through the motions of pursuing such a complaint on her own behalf when many caseworkers across the state would continue to face the same dilemma; in fact, much stands to be lost by delaying resolution of this issue. No matter how well-intentioned, people who are overwhelmed are prone

to making mistakes,[4] and in this particular situation, a mistake could come at the cost of a child's welfare.

[40] As we have determined herein, Price and similarly-situated caseworkers do not have a private right of action to enforce the statute. We have further determined that the Civil Service Complaint procedure does not provide an adequate remedy for allegations of noncompliance with the statute. And I note that although DCS asserted at oral argument the statute is for the primary benefit of children and families, it also acknowledged even a child or a parent harmed by a caseworker's caseload in excess of the statutory limitation would not have a right to sue for violation of the statute. In other words, as DCS succinctly put it, "there are no potential plaintiffs" for a violation of this statute. https://mycourts.in.gov/arguments/default.aspx?id=1981&view=detail (beginning at 26:10).

[41] Price does not specifically rely on Article 1, section 12 of the Indiana Constitution to support her claim for mandate, but I believe that provision gives context to our decision in light of the foregoing. Section 12 states, "All courts shall be open; and every person, for injury done to him in his person, property,

---

[4] For example, our supreme court recently disciplined an attorney for failing to act with reasonable diligence and promptness, failure to keep a client reasonably informed about the status of a matter, and failure to explain a matter to the extent reasonably necessary to permit a client to make informed decisions for three incidents arising out of his service as a contracted county public defender. *In re Shoaf*, 57 N.E.3d 808 (Ind. 2016). Described as doing "an exceptionally good job as public defender," the attorney in question was assigned a caseload in a year's time that was so high it would be difficult to adequately monitor. Julie McClure, *Local public defender's law license suspended 60 days*, The Republic (Sept. 10, 2016), http://www.therepublic.com/2016/09/11/local_public_defenders_law_license_suspended_60_days/ (last visited Oct. 11, 2016).

or reputation, shall have remedy by due course of law." This constitutional provision "does not specify any particular remedy for any particular wrong. Rather, it leaves the definition of wrongs and the specification of remedies to the legislature and the common law." *Cantrell v. Morris*, 849 N.E.2d 488, 499 (Ind. 2006). In *McIntosh v. Melroe Co., a Div. of Clark Equip. Co., Inc.*, 729 N.E.2d 972, 978-80 (Ind. 2000), our supreme court held that a products liability statute of repose that bars a claim that accrues more than ten years after the product was delivered to its initial user does not violate section 12 precisely because the legislature is allowed to expand or restrict the scope of a cause of action it has created. Section 12 requires procedural fairness: in the situation presented by *McIntosh*, it protects the remedy of all plaintiffs whose injuries accrue within the time limitation of the statute of repose, but because the statute of repose extinguishes the claim after that time, section 12 may not be invoked by those whose injuries accrue outside that time. Accordingly, the legislative choice to enact a statute of repose does not violate section 12 because "no one with an accrued claim is in the position of having the claim but no practical means of asserting it." *Id.* at 978.

[42]     Here, the legislature has defined a wrong—an on-going services caseload greater than seventeen cases at any one time—but has not specified a remedy. No one, at any time, has a means, practical or otherwise, for asserting a claim based on a violation of the statutory limit on caseloads, which has to violate the protections in section 12. In contrast to statutes of repose such as in *McIntosh* which cut short a remedy or statutes of limitations cases in which a party slept

on an available remedy, here there is *no* remedy unless we accept Judge Riley's alternate resolution of considering a mandate to compel DCS to act in accordance with the statute.

[43] For these reasons, I concur with Judge Riley that the trial court's dismissal of Price's action was in error.

# IN THE
# COURT OF APPEALS OF INDIANA

Mary Price, on her own behalf and on behalf of a class of those similarly situated,

*Appellants-Plaintiffs,*

v.

Indiana Department of Child Services; Director, Indiana Department of Child Services,

*Appellees-Defendants.*

Court of Appeals Case No. 49A05-1602-PL-380

**Kirsch, Judge, concurring in part and dissenting in part.**

[44]       I fully concur with my colleagues' decision affirming the trial court's judgment that the appellant does not have a private right of action. I believe, however, that the trial court was also correct in concluding that the appellant had an adequate remedy under the Indiana Civil Service Complaint procedure which she has failed to exhaust. As a result, we should not reach the issue of whether there is a public right of action under the statute.